Green v. Clark.

GREEN vs. CLARK and others.

Where a cause of action against carriers for negligence is of such a character that it may be prosecuted either by the owners of the property, or by their agent, (on account of an express contract between the agent and the carriers,) a judgment in favor of the carriers in a suit brought by the owners, is a bar to a subsequent suit by their agent.

It is not competent to prove that a verdict, which by the record purports to have been rendered on the trial of the issue, was actually given in consequence of an erroneous ruling of the judge.

So held, where the judgment was given in evidence by a defendant to show a former acquittal for the same cause of action, and the plaintiff sought to destroy its effect by proving that the judge instructed the jury, on the former trial, that the plaintiff was not the proper party to prosecute the suit.

CASE, tried at the Oswego circuit, in December, 1844, before GRIDLEY, Cir. J. The declaration stated that the defendants— Clark, Redfield and Buckley—were common carriers by water between Oswego and Lower Sandusky in Ohio; and that on the 23d of July, 1836, they received from the plaintiff on board the schooner Hercules, 625 barrels of salt, to be carried from Oswego to Lower Sandusky, and there to be delivered for the plaintiff for certain reasonable freight, &c.; but that neglecting their duty, &c. they did not deliver the salt, but by the negligence of the defendants and their servants, it was wholly lost to the plaintiff. There was also a count in trover. Plea, not guilty, with notice of special matter, and particularly of the former judgment, hereinafter mentioned.

On the trial it was admitted that the defendants were the owners of the schooner Hercules in July, 1836, and that N. Westcott was the master. The plaintiff gave in evidence a receipt signed by Westcott, dated at Oswego, July 23d, 1836, by which he acknowledged that he had received from the plaintiff 625 barrels of salt, which he agreed to deliver to the consignees, as directed in the margin, free of charges, and to receive the freight of the plaintiff at a price specified, on return of the consignees' receipt. In the margin opposite a statement of the parcels and weight of the salt, there was the following: "Property of Richmond, Williams & Crane, care of W. Neil & Co., *Lower Sandusky*, Ohio." It appeared that the salt was delivered at *Sandusky City*, a port on Lake Erie, at the mouth of Sandusky river, and that Lower Sandusky, the place where by the receipt it was to have been delivered, was a town on that river about thirty miles above its mouth. The place of business of W. Neil & Co. was at Lower Sandusky, but William Neil, one of the firm, lived at Sandusky City, and he accepted the delivery of the salt there. The salt was left at Sandusky City on account of the difficulty of passing the bar at the mouth of the river, and going up the river to Lower Sandusky.

The defendants insisted that the actual contract for the transportation of the salt, was made by the plaintiff with the defendant Buckley, who was admitted to be the managing owner of the Hercules; and for that purpose they proved and read in evidence a letter from the plaintiff to Buckley, dated Oswego, July 21st, 1836, and addressed to him at Sackett's Harbor, in which the plaintiff mentioned that on the arrival of the Hercules at Oswego, he would, if agreeable to Buckley, give her an up and down freight to and from *Sandusky* and Huron, Ohio. There was evidence tending to show that the defendants sent the vessel to Oswego to take in the salt in consequence of this letter.

To show that Richmond, Williams & Co., the owners of the salt, had acquiesced in and ratified the delivery at Sandusky City, the defendants proved and gave in evidence a letter in

the hand-writing of Gurdon Williams, one of the partners of that firm, addressed to William Neil, dated October 3d, 1836, as follows: " Mr. William Neil—Dear Sir. We are informed that a cargo of our salt, shipped by Mr. Green of Oswego, [the plaintiff,] on board of one of Festus Clark's vessels for Lower Sandusky, was left with you. We wish you not to sell any of it, as we intend it for the Messrs. Hollister, and shall give them an order for the same. You will please write us without delay the quantity you have received, and oblige, Richmond, Williams & Crane."

The defendants' counsel next gave in evidence the record of a judgment in this court in which Dean Richmond and others (who were proved to be the partners of the firm of Richmond, Williams & Crane,) were plaintiffs, and Festus Clark, one of the present defendants, was the defendant. It showed an action commenced at October term, 1837, the declaration being for the negligence of the defendant as a common carrier in not delivering a quantity of salt at Lower Sandusky, with a count in trover for converting a quantity of salt, and the plea being not guilty; a trial at the December circuit in 1839, and a verdict for the defendant, and also a judgment thereon, docketed in March, 1840. The defendants proved that the former suit was for the same salt now in controversy and was founded upon the same contract.

The plaintiff offered to prove that on the former trial the defendant raised and relied upon two points, first that the counts *in case* could not be sustained because Green (the present plaintiff,) was the contracting party; and secondly, that trover could not be sustained at all, either in the name of Green, or in the names of the owners of the salt; and that both these points were sustained by the circuit judge, on that occasion, and that he directed the jury to find a verdict for the defendant. The defendants' counsel objected to the evidence so offered, insisting that it was not competent for the plaintiff by parol evidence to defeat the tendency and effect of the former judgment; and that such former judgment was a bar to this action. The circuit judge overruled the objection, and the evidence was thereupon given to the effect stated in the offer; and the judge

thereupon decided that the former judgment was not a bar to the present action, and the defendants' counsel excepted.

The defendants examined Westcott, the master of the Hercules, who testified that after the vessel was loaded and he had discovered that the salt was consigned to Lower Sandusky, he objected to proceeding with it on account of the difficulty of passing the bar at the mouth of the river; upon which the plaintiff said if he could not get to Lower Sandusky he might leave the salt with William Neil at Sandusky City. The witness said he thought he had before that time signed the receipt, but could not be positive. There was other evidence upon this point on the part of the plaintiff. It appeared by the testimony of William Neil, who was examined on a commission, that he sold the salt at Sandusky City soon after it was left with him. Evidence was given on both sides touching the practicability of crossing the bar at the mouth of Sandusky river.

After the evidence was closed, the defendants' counsel requested the judge to charge 1. That the former judgment was a bar to the present action; 2. That the actual contract for carrying the salt was made between the owners of the property and the owners of the schooner, and that it was a contract to carry the property to Sandusky City and not to Lower Sandusky, and that the master, by signing the receipt which had been given in evidence, had exceeded his authority, and 3. That the plaintiff had ratified the delivery at Sandusky City.

The judge charged that the plaintiff had, in the first instance, proved enough to entitle him to recover. He left the question to the jury whether the master exceeded his authority in signing the receipt agreeing to carry the salt to Lower Sandusky. He charged that the former judgment was not a defence; that the letter of the plaintiffs to Neil, which had been given in evidence, was not a ratification of the delivery at Sandusky City, if Neil had already sold the salt. The question whether it was practicable for the vessel to have gone to Lower Sandusky was submitted to the jury, who were told by the judge that if she could have got up, the defence based on the alleged parol agreement with the master, would fail. The defendants' counsel

excepted to the several branches of the charge adverse to them. Verdict for the plaintiff.

*J. A. Spencer*, for the defendants, among other points, insisted that parol evidence was improperly received to show the grounds upon which the prior judgment was rendered; and that notwithstanding such evidence the judgment was conclusive upon the plaintiff's claim in the present suit. (*Robertson* v. *Smith*, 18 *John.* 459; *Lawrence* v. *Hunt*, 10 *Wend.* 80; *Betts* v. *Starr*, 5 *Conn.* 550; *Boynton* v. *Willard*, 10 *Pick.* 166, 169; *Schroeppel* v. *Jewell*, 1 *Cowen*, 208; *Smith* v. *James*, 7 *id.* 328; *Raymond* v. *Howland*, 12 *Wend.* 176, 178; *Millard* v. *Whitaker*, 5 *Hill*, 408.) He also maintained that the letter which the plaintiffs wrote to Neil was a ratification of the act of the defendants in delivering the salt at Sandusky City.

*G. F. Comstock*, for the plaintiff. The former suit and judgment were not a bar. The parties were different. The case was decided on a point foreign to the merits. The defendants are estopped from calling in question the decision which was made in the former suit on the motion and at the request of one of them—that the present plaintiff, being the party to the express contract, was the only person who could maintain an action for the breach of duty complained of. (1 *Marsh.* 526; *Cowen & Hill's Notes*, 818, 824, 826, 972; 1 *Stark. Ev.* 194, *n.*; 1 *Phil. Ev.* 326; 2 *Dow's Parl. Rep.* 314; 7 *John.* 22; 4 *id.* 222; 9 *id.* 352; 12 *Wend.* 504; 16 *id.* 584; 6 *Verm. Rep.* 628.) The salt having been sold by Neil before the plaintiff's letter was written, it can have no effect on the case.

BEARDSLEY, Ch. J. On the 23d of July, 1836, a cargo of salt was put on board the defendants' schooner Hercules, for which the master, (N. Westcott,) gave his written engagement of that date. Assuming that the master was duly authorized to act for the defendants, their liability depends upon the writing, to which reference has been made. It was more than a mere receipt, for it shows not only that the salt had been re-

ceived on board the schooner, but also what was to be done with it. In terms, the writing states that the salt, although received from the plaintiff in this suit, was the property of Richmond, Williams & Crane; and taking the engagement of the master as expressed in the writing to be that of the defendants, they thereby promised to deliver the salt to W. Neil & Co., at Lower Sandusky, Ohio, free of charges, as the freight was to be received of the plaintiff on the return of the consignees' receipt for the salt. Such was the defendants' engagement, but which was not performed, as they failed to deliver the salt at the designated place. Lower Sandusky is about thirty miles up the river Sandusky, which empties into Sandusky Bay, on lake Erie. Sandusky City is on the bay at the mouth of the river. W. Neil & Co. were located at Lower Sandusky; but Neil had a separate establishment at Sandusky City. When the schooner arrived at that place, it was found to be difficult, if not impracticable, to ascend the river to Lower Sandusky; and the salt was left with Neil at Sandusky City. This was about the first of August. The owners of the salt, Richmond, Williams & Crane, were duly informed of this; and on the third of the succeeding October, they wrote to Neil at Sandusky City, stating they had been informed that the salt had been left with him instead of being taken to Lower Sandusky, and directing him not to sell any part of it, as it was intended for the Messrs. Hollisters, to whom an order for it would be given. The letter also desired Neil to advise the owners without delay what quantity of salt he had received. An order was shown to have been given to the Hollisters, as stated in the letter; but the salt was not received by them, having been disposed of by Neil some time previous to that letter being written.

The letter was written with full knowledge that the defendants had violated their contract in leaving the salt at Sandusky City, and were consequently liable to the owners for its value. Every thing material between the defendants and the owners was known to them when the letter was written, although they were not then aware that the salt had been sold by Neil. That however was his act alone, as it does not ap-

pear to have been directed or in any way sanctioned by the defendants. Their violation of duty was in omitting to deliver the salt at Lower Sandusky, as they had agreed to do ; and if the owners had thought proper to stand upon their rights, the defendants would have been liable for the full value of the salt. But the owners might ratify the act, unauthorized as it was, of leaving the salt at Sandusky City, and thus waive their right of action against the defendants ; and I think this letter to Neil was a complete ratification of what had been done by them. Any act of the owners, with knowledge, indicating an intention to hold on to the salt at Sandusky City as their own, and therefore wholly inconsistent with the supposition that the defendants were to be held liable for their breach of duty, amounts to a positive ratification of what had been done without authority. A subsequent ratification by the principal of an unauthorized act or omission of his agent, is equivalent to a prior authorization. The maxim is *omnis ratihabitio retrotrahitur, et mandato priori æquiparatur*, and the ratification completely exonerates the agent from all the consequences of his misconduct. (*Story on Agency, 2d ed.* §§ 239, 243, 4 ; *Broom's Legal Maxims*, 380–3.) A small matter is sufficient to establish a ratification ; and the acts of the principal are to be construed liberally in favor of the agent. If what was done without authority has been adopted in any manner, even for a moment, the principal cannot recede, but is conclusively bound. (*Codwise* v. *Hacker*, 1 *Caines*, 526 ; *Paley on Agency, by Dunlap*, 171, 2.)

The letter of Williams to Neil admits of but one interpretation, and is wholly inconsistent with any other supposition than that the owners meant to hold on to the salt as their own, instead of resorting to the defendants to obtain redress for the wrong done by them. After this recognition and adoption of the unauthorized act of the defendants, it is too late to fall back and insist that the act was a tortious conversion of the salt. Upon this point, I cannot but think that the learned judge before whom the cause was tried, fell into an error. He should, as it seems to me, have nonsuited the plaintiff, or have told the jury that the

letter was an unqualified adoption of what had been done by the defendants, and therefore the plaintiff could not recover.

This, however, is not the only difficulty in the case. With whom, let me ask, did the defendants contract for the delivery of this salt at Lower Sandusky? This depends upon what is the true state and meaning of the writing executed by the master of the schooner; for no parol evidence was given which if admissible for that purpose, can have any effect on the question. The salt was the property of Richmond, Williams & Crane, as is shown in express terms by the writing; and that fact seems to have been conceded throughout the trial. It does not appear that the plaintiff had any interest in or right to the salt, or that he acted in any other character or right than as agent for the owners. Looking then at this writing, I should say it was a contract with the owners of the salt, and not with the plaintiff. True the salt was received from him, as the writing states; but it also states that the salt was the property of Richmond, Williams & Crane. They were the general owners; and the plaintiff is not shown to have had any special property in the salt. How then can it be said that the defendants' promise was to the plaintiff, and not to Richmond, Williams & Crane, who alone appear to have had an interest in the salt? I think the contract must be taken to have been made with the owners, and not with the plaintiff, although the salt was received from him. The defendants engaged to transport it to Lower Sandusky; and it was their duty to the owners, not to the plaintiff, to perform that engagement. They owed no such duty to him, for he is not shown to have had any concern with the salt, except as agent for the owners. The salt was not his. He had neither the general or a special property in it; and without one or the other, it is plain he could not maintain the action. This principle is elementary, and does not require an authority to support it. A stranger in interest cannot sue, although he may have been acting as agent in reference to the thing in question. In order to maintain the action of trover or case for negligence, the plaintiff must have an interest in the subject matter of the suit. In other words, he must have the

Green *v.* Clark.

general or a special property therein. The plaintiff does not appear to have had either; and he showed no right of action whatever. Until we can see the ground on which the plaintiff's right of action is supposed to exist, it seems to me impossible to form any just opinion as to the effect which the judgment given in evidence on the trial should have against him. I shall therefore not go into that question. Upon an incidental point, however, connected with that subject, I have a very decided opinion. The verdict in that case was *not guilty*, upon which a judgment was rendered for the defendant. I think parol evidence was inadmissible to show that the verdict was not rendered on the merits of the cause, but on a formal objection to the action. A general verdict of not guilty imports that the verdict was on the merits; and parol evidence cannot be received to explain, qualify or contradict what is thus shown by the record. That imports verity, and is conclusive evidence that the verdict in this case was on the merits. The parol evidence, according to the ruling at the circuit, destroys the effect of the judgment proved by the record, as upon the merits of the cause in which it was rendered, and reduces it to the grade of a judgment of nonsuit. This certainly is in no case admissible. While the record remains, that is the only evidence of what the judgment was; and parol evidence is inadmissible to change its character.

I think there should be a new trial.

McKissock, J. concurred, on the ground that parol evidence was improperly admitted to explain the judgment record given in evidence.

Whittlesey, J. The basis of this action is the contract or receipt given by the master of the schooner to the plaintiff, by which it was agreed to deliver the salt to the consignees named in such instrument at Lower Sandusky.

The first question that arises is whether the master had authority to bind the defendants, who were owners of this schooner, to deliver this cargo of salt at Lower Sandusky. There is

nothing in the suggestion that the defendants had made a specific contract with the plaintiff as to the carriage of the salt, and that the master, as agent of the defendants, could not make a different one. That which occurred between the plaintiff and one of the defendants was a mere general overture to freight the schooner to some port on lake Erie; and the master was sent to take this freight. The details of the arrangement or agreement would necessarily in such case be left with the master. As a general rule the master is to be deemed the confidential agent of the owners, and has an implied authority to bind them without their knowledge by contracts relative to the employment of the vessel. (3 *Kent's Com.* 161; *Ellis* v. *Turner*, 8 *T. R.* 531; *Reynolds* v. *Toppan*, 15 *Mass. R.* 370.) He would not indeed have power to contract for an impossible voyage, or perhaps to contract to deliver freight where the vessel could by no possibility go. In this case it would appear that at some times, vessels drawing as much water as did the one in question, could not ascend the river so as to reach Lower Sandusky, the place of delivery of this salt, and perhaps it was seldom, and only with a favorable wind, that such a vessel when fully loaded could reach this point. Still it appears that vessels navigating the lakes did go to Lower Sandusky, and take freights for that place : and hence the judge did not err in ruling, that the facts proved were not sufficient to constitute a defence so as to require the court to decide as a matter of law, that the master exceeded his authority in agreeing to take the goods to Lower Sandusky. Perhaps there is a question of fact involved in this point that might have been left more distinctly to the jury, but there was no request on the part of the defendants that it should be so submitted.

The master having authority to contract for the defendants, the owners of the schooner, and the property shipped in pursuance of such contract not having been delivered at the stipulated place of destination, the defendants are liable as common carriers, unless they can establish some valid defence. It would seem that in making the contract, and taking the salt on board, the master did not know the difference between

Lower Sandusky and Sandusky City, nor the greater difficulty in reaching the former place. All this was brought to his knowledge before the loading was completed, and a communication was had with the plaintiff in regard to it. It is to be assumed that the plaintiff agreed or consented, that if it was found impossible to go to Lower Sandusky, the salt might be left at Sandusky City; but whether this agreement or consent was before or after the execution of the written receipt, is certainly from the testimony, a matter of doubt. Indeed, in relation to all circumstances connected with this aspect of the case, the testimony is contradictory, and it is in connection with this point that there arises the only material question of fact. If the master, after he had loaded his schooner and executed his receipt, had been informed of the difficulties of reaching the stipulated port, and the plaintiff had entered into the agreement or consent contended for, it would have amounted to a defence, if in point of fact he had been unable to ascend the river on reaching its mouth. But if on the other hand, after having obtained all the information in relation to the port of delivery, he had executed the receipt for the delivery at the difficult point, it would merge all previous parol agreements in regard to it, and the parties would be bound by the written agreement. The whole matter was fairly referred to the jury, and their verdict must be considered as determining the question of fact.

The judge was correct in deciding that the letter of the owners of the salt to W. Neil, dated October 3d, 1846, and the facts connected with it, did not amount in legal effect to a waiver of the delivery of the salt at Lower Sandusky or a ratification of the delivery to. Neil. It would seem that at the time that letter was written, the salt was probably sold, but it certainly was not *per se* a ratification of the delivery to Neil. If there were any facts about it requiring it to be more distinctly submitted to the jury than was done, the defendants should have asked for such distinct submission.

The principal legal question in the case, is as to the effect of the prior judgment, in a suit in regard to this same salt between

the owners thereof and one of the present defendants, in which there was a verdict and judgment for such defendant. I have been led to the examination of a great number of cases in regard to this point. As the result of this examination, I have come to the conclusion, that if the merits were passed upon in such prior suit, the judgment therein is a bar to the present action. The judgment record is such as to carry upon its face, after having proved by parol, the identity of the subject matter of the suit, that the merits were passed upon, inasmuch as it shows a verdict for the defendant, and a judgment on such verdict. But I am also of opinion that it is competent to show by parol, that the judgment was rendered upon some technical point, and not upon the merits. Parol evidence in relation to extrinsic facts is necessary to be admitted in connection with judgment records—not to contradict, but to explain them, and to show how such records are applicable, and how they are pertinent to the case on trial. Such evidence being admitted, we see that the former judgment turned upon the point, that the action could not be maintained in the names of the plaintiffs to that record, and that the action of trover could not be maintained at all, for which reason, the judge directed a verdict for the defendant. This was in legal effect equivalent only to a nonsuit. The cause went off upon a technical point. There was no decision upon the merits. There was only a determination that the plaintiffs could not maintain case, and that no plaintiff could maintain trover. That is no reason why the present plaintiff should not maintain case if the merits are with him. The good sense of all the adjudications in regard to bars by a prior judgment, is that a former judgment upon the merits shall be a bar to another suit for the same matter between the parties to the former suit, and those who are in privity with them. If the merits were not brought in question on the former suit, but the judgment turned upon some technical point, the former judgment is no bar to a new suit. I therefore think the circuit judge was correct in his decision upon this point, and that upon the whole case, a new trial should be denied.        New trial ordered.