O'DOUGHERTY v. BOSTON AND WORCESTER RAILROAD COMPANY, appellant.

*Common carrier — erroneous delivery, liability of carrier for — discharged by ratification of consignee.*

Plaintiff shipped goods consigned to J. D., Boston. After their arrival at Boston, the carrier delivered them to the Pawners' Bank, which bank received them as security for a loan to one M. Subsequently the consignee called at the bank, designated a portion of the goods to be held as security for the loan to M., and from time to time thereafter took portions of the remainder to the store of M., where they were sold with his consent. *Held*, that although the original delivery might have been erroneous, and the carrier liable to the consignor, such liability was discharged by the subsequent acquiescence of the consignee in the delivery.

The consignee is presumptively the owner and is to be regarded by the carrier as absolute owner until notice to the contrary appears, and any delivery which discharges the carrier as between him and the consignee is good against the consignor.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to recover the value of certain goods shipped by the plaintiff in April, 1860, by railroad, at Syracuse, directed to J. Dougherty, Boston, Mass., and which were received by defendant at Worcester, Mass., and by it carried from that place to Boston. The case was referred to Hon. J. MULLIN, who found in favor of the plaintiff. The material facts set forth in his report are as follows:

The goods arrived in Boston about April 5th, 1860. It was the custom of defendant to send written notice to consignees of the arrival of freight, and if such freight was not taken away within a limited time, to store it for the consignee. Notice was sent to J. Dougherty through the post-office, addressed to him at Boston, as he was unknown to the defendant's agents, and his name did not appear in the city directory. The goods not being called for were sent to a warehouse.

About May 4th, 1860, one Warren, who was employed by the Pawners' Bank of Boston — a corporation authorized by law to advance moneys upon pledges of personal property — applied to defendant for the goods, and upon paying the freight charges received an order upon the proprietors of the warehouse for their delivery. The goods were taken by him to a storehouse of the Pawners' Bank. The bank took possession of the goods and held them as security for a loan made to one McGilvery, an auctioneer doing business in Boston. The referee finds that the delivery of the goods to Warren was without the knowledge or consent of the consignee.

A few days after the goods were received by the bank the consignee, at the request of McGilvery, called at the bank, saw the goods, and designated what portion of them should be held by the bank as security for the loan to McGilvery; and on several other occasions subsequently, at McGilvery's request, selected and took away to McGilvery's auction store small packages of the goods, which were sold at such store with the consignee's knowledge..

The referee finds that plaintiff did not know of or assent to any disposition of the goods by the consignee; nor did he authorize McGilvery to receive or dispose of any of such goods, and held, as a conclusion of law, that by the wrongful delivery of the property the defendant became liable to plaintiff for its conversion, and that

the subsequent possession of the consignee did not change the rights or liabilities of the parties.

*John F. Seymour*, for appellant. The consignee is presumptively the owner of the goods shipped. *Ludlow* v. *Brown*, 1 Johns. 15; *Price* v. *Powell*, 3 N. Y. 322; *Green* v. *Clark*, 13 Barb. 57; *Davis* v. *Hoppock*, 6 Duer, 256. The delivery was ratified by the subsequent action of the consignee, and the consignor was bound thereby. *Commercial Bank of Buffalo* v. *Warren*, 15 N. Y. 577; *Green* v. *Clark*, 5 Den. 503; Broom's Leg. Max. 380, 383; Story on Agency, §§ 239, 243, 244 (2d ed.); *Lawrence* v. *Taylor*, 5 Hill, 113; *Codwill* v. *Hacker*, 1 Cow. 526; Dunlap's Paley on Agency, 171; Edw. on Bailments, 519; *Sweet* v. *Barney*, 23 N. Y. 335; Mars. Stats. at Large, ch. 54, p. 29.

*Wm. Kernan*, for respondent. The plaintiff as owner is entitled to maintain this action. *Brown* v. *Bement*, 8 Johns. 96; *Ackley* v. *Finch*, 7 Cow. 290; *Langdon* v. *Buel*, 9 Wend. 80; *Ferguson* v. *Lee*, id. 258; *Patchin* v. *Pierce*, 12 id. 61; *Dane* v. *Mallory*, 16 Barb. 46; *Burdick* v. *McVauner*, 2 Den. 170. By failure to deliver the goods to consignee, and by the wrongful delivery, defendant became liable to plaintiff for the value. Story on Bailment, § 543; 2 Kent's Com. 604; *Ostrander* v. *Brown*, 15 Johns. 39; *Gibson* v. *Calver*, 17 Wend. 305; *Fisk* v. *Newton*, 1 Den. 45. A wrongful delivery is a conversion by the carrier, and the owner is not bound to take back the property. Story on Bailment, §§ 232, 269, 450, 545, *b*, 570; Redfield on Railways, 240, § 30, subd. 1; Redfield on Carriers, 85, § 103; *Ostrander* v. *Brown*, 15 Johns. 39; *Packard* v. *Getman*, 4 Wend. 614; *Powell* v. *Myers*, 26 id. 589; *Willard* v. *Bridge*, 4 Barb. 361; *Hawkins* v. *Hoffman*, 6 Hill, 586; *McEntee* v. *N. J. Steamboat Co.*, 45 N. Y. 34. The right of action once vested could be destroyed only by release, or receipt of something in satisfaction. Story on Bailment, § 582 *a*; *Allaire* v. *Whitney*, 1 Hill, 454; *Bowman* v. *Teal*, 23 Wend. 306; *McKnight* v. *Dunlop*, 5 N. Y. 537.

TALCOTT, J. The referee, after finding that Warren, the messenger of the Pawners' Bank, had, upon the order of the defendant, received the goods from the warehouse, where they had been stored by the defendant, and carried them to the Pawners' Bank, and left them in the building occupied by the bank, and that J. O. Dougherty. the assignee, did not know of or authorize the delivery to Warren, or

any other person, proceeds to further find that " a few days thereafter the said consignee, at the request and for the benefit of McGilvery, called at the bank, saw said goods, and designated what portion of them should be held by said Pawners' Bank as security for the loan to said McGilvery of $1,000, and on several other occasions subsequently said consignee, at the request of said McGilvery, called at said bank, selected and took and caused to be taken away to the auction store of said McGilvery small parcels of said goods, and knew of the sale of said goods in said auction store."

Thus it appears that after the erroneous delivery by the defendant, if it were such, the consignee took control of the goods at the place where they had been delivered and were. The Pawners' Bank, so far as appears, neither had nor claimed any interest in the goods until after the consignee had been a party to the arrangement by which it made a loan on the portion designated by the consignee, and up to that time, if the delivery was erroneous and the defendant had been advised thereof by the consignee or otherwise, the defendant might, and doubtless would, have reclaimed the property, and by another delivery have at least reduced the claim against them for the first erroneous delivery to a mere nominal one. The following principles of the law of carriers we take to be well settled: The consignee is presumptively the owner, and is by the carrier to be regarded as absolute owner until notice to the contrary appears. And any delivery which discharges the carrier, as between him and the consignee, is good against the consignor. The consignee, or his authorized agent, may receive goods addressed to him at any place, either before or after their arrival at their place of destination, and such acceptance operates as a discharge of the carrier from his liability. And any act of the owners, with knowledge of the erroneous delivery by which they assume to take control of the goods at the place of delivery in fact, amounts to a ratification of an erroneous delivery, so far as the value of the property is concerned, leaving, perhaps, the carrier responsible for the mere damages resulting legitimately from the delivery at the wrong place. *Green* v. *Clark*, 5 Den. 503; *Sweet* v. *Barney*, 23 N. Y. 335. In *Green* v. *Clark*, *supra*, it is said by the court: "Any act of the owners indicating an intention to hold on to the salt at Sandusky City as their own, and therefore wholly inconsistent with the supposition that the defendants were to be held liable for a breach of duty, amounts to a positive ratification of what had been done without authority." We do

not see why the same rule must not necessarily be applied to the acts of the consignee in exoneration of the carrier, though it should afterward turn out that as between the consignor and consignee the former was the true owner. As to the carrier, the consignee is owner, and to be treated, and his orders and acts regarded as such.

We are, therefore, of the opinion that upon the findings of the referee, and conceding the delivery to the messenger of the Pawners' Bank to have been without original authority from the consignee, that his subsequent assumption of control over the goods, and taking an active part in pledging them to the Pawners' Bank and sending them elsewhere for sale, was a ratification of the unauthorized delivery by the consignee, and that the consignee, being the ostensible owner, had authority to bind, and did bind, the consignor by such ratification and assent to the erroneous delivery, consequently that the defendant is not liable to the plaintiff for the value of the goods, and if there should be any doubt about the foregoing conclusion, we are of opinion that the case should undergo another investigation upon the facts.

(The remainder of the opinion is devoted to a consideration of the evidence taken before the referee, and no question of law is passed upon.)

*Judgment reversed and new trial ordered.*