DAVID P. LESTER, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Common carrier — goods owned by one person consigned to another — the owner's right to delivery dependent upon his right to possession — statements made to a railroad freight agent.*

Certain goods were delivered to P. O'Donnell at Fort Plain, under an agreement between him and David P. Lester, which provided that O'Donnell was to sell the goods for Lester, and as his agent, in such places as O'Donnell might desire, "for such length of time as shall be mutually agreeable." O'Donnell shipped a part of the goods to Norwich, by the D., L. & W. railroad, under a bill of lading in which the consignors and consignees were "Williams & O'Donnell," Williams being a man in O'Donnell's employ. While these goods were in the railroad freight house at Norwich, Lester, who lived at Oswego, telegraphed from there to the freight agent at Norwich: "Goods consigned to Williams & O'Donnell belong to me. Deliver only upon my written order.

D. P. Lester." After the receipt of this telegram, the freight agent delivered the goods to Williams & O'Donnell, on their producing and delivering the bill of lading and paying the freight.

Thereafter Lester brought an action against the railroad company for the conversion of the goods.

*Held,* that, as the evidence showed that the agreement, the performance of which required that O'Donnell should have the goods for the purpose thereof, was unabrogated and in full force at the time of the delivery of the goods to O'Donnell by the defendant, the plaintiff was not then entitled to the possession of the goods, and, hence, could not recover as for their conversion, assuming that if the plaintiff was the owner and entitled to the possession of the goods it was the duty of the defendant to deliver them to him although consigned to a different party.

Before the delivery of the goods by the freight agent at Norwich, the plaintiff made certain statements to the defendant's freight agent at Oswego in reference to the goods then at Norwich.

*Held,* that the defendant was not chargeable with any notice to be derived from such statements, since, as its agent at Oswego had nothing to do with the goods at Norwich, the matter was not within the scope of his agency or employment.

APPEAL by the defendant, the Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Oswego county on the 2d day of December, 1892, upon a decision of the court rendered after a trial by the court without a jury at the Oswego Circuit.

This action was brought for the conversion of a quantity of personal property. In the complaint it is alleged that the defendant is a common carrier, and that, as such, in December, 1889, it received into its possession a quantity of goods, consisting of about forty-one sets of "Norcross governors and fixtures," the property of the plaintiff, to be shipped from some point within this State to Norwich, N. Y., and consigned to "Williams & O'Donnell;" that the defendant transported the goods to Norwich, and while it there held them the plaintiff notified the defendant that he was the owner of the property, and that the defendant must not deliver the same except upon plaintiff's written order; that thereafter, and on or about January 18, 1890, the defendant wrongfully and unlawfully delivered the goods to Williams & O'Donnell, and thereby converted the said property to its own use.

In the answer it is admitted that the defendant is a common carrier, and that, as such, in December, 1889, it received into its pos-

session certain goods to be delivered to " Williams & O'Donnell," and transported the same to Norwich, N. Y., and that a delivery of said goods was made to Williams & O'Donnell.   The other allegations of the complaint are denied.

*William Kernan,* for the appellant.

*D. P. Lester,* for the respondent.

Merwin, J. :

On the 1st day of November, 1889, the plaintiff and one P. O'Donnell entered into a written agreement, under seal, as follows :

" This agreement, made this 1st day of November, 1889, between D. P. Lester, of Oswego, N. Y., of the first part, and P. O'Donnell, of the same place, party of the second part, witnesseth : That the party of the second part hereby agrees to sell for the party of the first part, for such length of time as shall be mutually agreeable, a furnace attachment known as ' Norcross furnace governor ' and fixtures, acting as the agent for party of the first part to the extent and in the manner herein stated, and in such places as party of the second part may desire, on the following conditions, viz. :

" Party of the first part is to furnish party of the second part with said governors at $4.50 apiece, or set, and discs, damper, bars, tubes, &c., at reasonable market value, the party of the second part paying expense of packing, carting, shipping, and the said property to remain the parties of the first part until paid for.   Party of the second part is to pay over to party of the first part, as fast as collected, the moneys received for the sale of such governors, &c., on the basis as aforesaid, retaining the balance for his own use and for services in making such sales, and to become personally responsible to party of the first part for the collection of all goods sold by him, guaranteeing the payment thereof ; and to render an account every 30 days to party of the first part, showing amount sold, amount of goods on hand and names and addresses of parties to whom sold, including persons to whom sold or delivered on approval.   All sales to be for cash.   The freight on all goods returned to Boston or elsewhere, not sold, is to be paid by party of the second part.

" D. P. LESTER,    [L. S.]

" P. O'DONNELL.   [L. S.] "

H. D. Trask & Co. of Boston were the proprietors and manufacturers of the Norcross furnace governors. With them, the plaintiff, about the 1st of November, 1889, made an arrangement by which they, on November 11, 1889, shipped to O'Donnell at Fort Plain, N. Y., fifty sets. These reached O'Donnell at Fort Plain about the middle of November and they were received by him under and in pursuance of the agreement between him and plaintiff. Of these O'Donnell sold twenty sets at Fort Plain and received the pay therefor. The balance was shipped by him to Norwich about the twenty-third of December, and this is the shipment referred to in the complaint. The consignors and the consignees in the shipping bill were " O'Donnell & Williams." Williams was a man in the employ of O'Donnell.

The plaintiff lived at Oswego, and a day or two before the 6th of January, 1890, he had a talk with Mr. Taylor, the freight agent of the defendant at that place, about the goods in question, but Taylor declined to take any responsibility in the matter. Thereupon, on the sixth of January, the plaintiff sent to the freight agent of defendant at Norwich a telegram as follows :

" Goods consigned to Williams & O'Donnell belong to me. Deliver only upon my written order.

" D. P. LESTER."

This was received at Norwich the same. day. Upon its receipt, Mr. Boyce, the agent at Norwich, sent a telegram to Mr. Taylor, the freight agent at Oswego, in substance directing him to inform Lester that they could not hold the goods if demanded by Williams & O'Donnell on the bill of lading. This notice or telegram did not, according to the evidence of the plaintiff, reach him till the evening of the ninth of January. On the tenth of January the plaintiff mailed a letter to Mr. Boyce, stating that he was the owner of the goods and desired them to be reshipped to Oswego and that he would advance the freight if desired. He also offered to furnish evidence of his right to have possession. This letter reached Mr. Boyce on the eleventh of January. In the meantime, and on the seventh or eighth of January, O'Donnell & Williams called at the freight office for the goods and were told that they would not

be delivered unless they produced the bill of lading or shipping bill. They were also told by the freight agent that he had received from D. P. Lester of Oswego a telegram to hold the goods, and they replied that they had had some difficulty with him, but they would pay for the goods or the matter would be all straightened out. Afterwards, and on the tenth of January, O'Donnell & Williams produced the bill of lading or shipping bill, delivered it to the defendant's agent, paid the freight, and the agent thereupon delivered to them the goods. This was before the letter of plaintiff of tenth of January was received. O'Donnell or O'Donnell & Williams upon receiving the goods went to selling them at Norwich and sold and delivered there twelve sets, and the balance O'Donnell took to Syracuse and sold them there later on in the winter or spring. This action was commenced on January 22, 1890. On the 18th of February, 1890, O'Donnell paid the plaintiff $144 in payment for the thirty-two sets sold by O'Donnell at Fort Plain and Norwich. This sum is arrived at by taking the price stated in the contract. That left eighteen sets unaccounted for. The recovery here is for the value of those at five dollars a set, with interest from January 10, 1890.

In *Western Transportation Co.* v. *Barber* (56 N. Y. 552) it is said by Judge GROVER that " a bailor can confer upon his bailee no better title than he has himself, except in cases of negotiating bills of lading and like cases. If the owner demands the property of the bailee and he refuses to deliver it to him, he is at once liable to him in an action for its conversion." A similar view is taken by other authorities. (Angell on Carriers, § 335; Hutchinson on Carriers, § 407; Story on Bailments, § 450; *Wilson* v. *Anderton*, 1 Barn. & Adol. 450; *Rogers* v. *Weir*, 34 N. Y. 471.) In some of the authorities it is said that the remedy of the bailee for protection against different claimants is through a bill of interpleader.

Assuming then that if the plaintiff was the owner and entitled to the possession of the goods, it was the duty of the defendant to deliver them to him, though consigned to a different party, the question then is, has the plaintiff shown himself to have been the owner and entitled to the possession at the time he gave the notice on the sixth of January? There is evidence tending to show that the plaintiff was the owner, but was he entitled to the possession? The goods were

received by O'Donnell under the agreement of November 1, 1889. He then became the possessor for the purposes of the agreement and the possession was necessary in order to carry out the evident purpose of the agreement. This agreement, for aught that appears, was in full force on the 6th of January, 1890, when plaintiff sent the telegram to defendant's agent. O'Donnell, who was a witness for plaintiff, testifies that it was then and afterwards in force, and this the plaintiff, in his evidence, does not deny. O'Donnell, immediately after receiving the goods from defendant, went on in his usual way, sold and delivered twelve sets, and these the plaintiff, on the eighteenth of February, received the pay for from O'Donnell at the price named in the agreement, although the value in fact was more. This clearly indicates that the contract was considered to be in force after the defendant's delivery. That being so, the plaintiff had, I think, no right to treat the delivery by defendant as a conversion. The plaintiff had a right to terminate at pleasure the agreement, but he had not done so.

The defendant is not chargeable with any notice to be derived from statements made by the plaintiff to the defendant's freight agent at Oswego before the plaintiff sent the telegram on the sixth of January. The agent at Oswego had nothing to do with the goods at Norwich. That matter was not within the scope of his agency or employment.

The plaintiff, in his telegram, did not demand possession, and the letter of plaintiff was not received until after the delivery to O'Donnell.

We think that the plaintiff failed to show a conversion by the defendant and, therefore, the judgment should be reversed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.