DAVID P. LESTER, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

*Conversion — wrongful delivery by a carrier after notice — what demand is necessary — effect of accepting a payment after suit begun.*

In an action brought for a conversion it appeared that the plaintiff had constituted Patrick O'Donnell his agent to sell furnace governors for him for such a length of time as should be "mutually" agreeable; that in the latter part of December, 1889, the plaintiff forbade O'Donnell to do any further business for him; that O'Donnell had been in possession of certain furnace governors belonging to the plaintiff and had shipped those in question to Norwich, N. Y., consigned to Williams & O'Donnell; that on January 6, 1890, the plaintiff telegraphed to the defendant's freight agent, at Norwich, notifying him of his ownership and forbade him to deliver the furnace governors except upon the written order of the plaintiff; that the freight agent replied, through the freight agent of the defendant at Oswego, where the plaintiff was, that he could not hold the freight if it was demanded on a bill of lading; that on January 10, 1890, the agent at Norwich delivered the goods to O'Donnell on the bill of lading; that on the same day, and the day after the plaintiff had received the message

stating that the agent at Norwich could not hold the goods if they were demanded on a bill of lading, he wrote to the freight agent at Norwich directing him to ship the goods at once to Oswego, and stated that if required he would advance the freight and would furnish evidence that he owned the goods.

It further appeared that after the present action was begun O'Donnell paid the plaintiff for some of the goods in question which he had subsequently sold; and that the plaintiff received the money and told O'Donnell that he would apply it on his claim.

*Held,* that as the plaintiff was the owner of the goods the delivery was wrongful and amounted to a conversion;

That no demand was necessary other than the one made;

That the receipt by the plaintiff of the payment made by O'Donnell was not a waiver of the plaintiff's claim against the defendant for the balance due, and did not affect the plaintiff's right to maintain the present action;

That the defendant, by the corresponding reduction in the amount of the damages, received all the benefit to which it was entitled from the payment.

APPEAL by the defendant, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 16th day of July, 1895, upon the decision of the court rendered after a trial at the Oswego Circuit before the court without a jury.

This action was brought to recover the value of certain "Norcross Furnace Governors" alleged to have been converted by the defendant, a common carrier, by a wrongful delivery.

On the 1st day of November, 1889, the plaintiff and one Patrick O'Donnell entered into a written contract by which the latter was to sell for the plaintiff and as his agent, for such length of time as should be "mutually" agreeable, "an article known as the 'Norcross Furnace Governor.'"

In October or November, 1889, the plaintiff ordered of H. D. Trask & Co. of Boston, Mass., fifty sets of these governors; the bill of sale described the goods as having been bought by D. P. Lester of H. D. Trask & Co. and sent to P. O'Donnell. About the middle of November, 1889, O'Donnell received at Fort Plain, New York, the fifty furnace governors, took possession of them and sold twenty sets at Fort Plain and Canajoharie; the balance of them, on the 23d of November, 1889, he shipped to Norwich, New York, the goods being consigned to Williams & O'Donnell, Norwich, New York.

In the latter part of December, 1889, or the beginning of January, 1890, the plaintiff met O'Donnell in one of the public highways in the city of Oswego and forbade his doing any further business for him.

On January 6, 1890, the plaintiff telegraphed to defendant's freight agent at Norwich, notifying him of plaintiff's ownership of the goods and forbidding delivery except upon plaintiff's written order. In response to this, defendant's freight agent at Norwich telegraphed to the freight agent of the defendant at Oswego to notify the plaintiff that he could not hold the freight if it was demanded on a bill of lading.

About the 8th of January, 1890, O'Donnell called at the defendant's freight office at Norwich and asked for the goods, when he was informed of the telegram from the plaintiff, and told that he could not have the goods without the bill of lading. On January tenth O'Donnell called again with the bill of lading, paid the freight and demanded the goods, which were delivered to him and the bill of lading taken up.

On the 11th of January, 1890, the defendant's freight agent at Norwich, New York, received the following letter from the plaintiff:

"OSWEGO, N. Y., *January* 10, 1890.

"MR. S. L. BOYCE, Freight Agent, Norwich, N. Y.:

"DEAR SIR.— You are doubtless in receipt of my telegram of the 6th inst. notifying you that I am the owner of the goods at your office, consigned to Williams & O'Donnell. I desire the goods re-shipped to Oswego at once, and, if desired, I will advance the freight. Please advise me if the request will be complied with. Should you entertain any doubts as to my right to the possession of the goods, I will furnish you with evidence showing same.

"Very respectfully yours,

"D. P. LESTER."

Upon the delivery of the goods O'Donnell proceeded to sell them, disposing of about twelve sets at Norwich and of the remainder at Syracuse, receiving the pay for them. About a month after the commencement of this action he paid to the plaintiff $144 for the twenty sets sold at Fort Plain and Canajoharie and the twelve sets sold at Norwich after receiving the goods at that place, which were

all that he had sold up to that time, and the plaintiff told him that he would take the money and apply it on the account.

*William Kernan*, for the appellant.

*D. P. Lester*, respondent, in person.

MERWIN, J. :

In this case, upon a former appeal (73 Hun, 398), a judgment in favor of the plaintiff was reversed mainly on the ground that the plaintiff had not shown the termination of the contract between himself and his agent O'Donnell, and, therefore, had not shown himself to be entitled to the possession of the goods which were delivered by the defendant to O'Donnell, and for the conversion of which this action was brought, on the theory of a wrongful delivery by the defendant to O'Donnell.

Upon the trial now under review there is evidence tending to show that, prior to the notice to the defendant of plaintiff's claim that he owned the goods and was entitled to the possession thereof, the contract between the plaintiff and O'Donnell was terminated, and the trial court so found. The evidence upon this subject was not given upon the first trial, and the appellant claims that it is not sufficient to sustain the finding. An explanation was given by the plaintiff for its absence upon the first trial. Whether the explanation was satisfactory and whether the evidence as given was reliable were matters for the trial court to consider. We are of the opinion that its conclusion upon the subject should not be disturbed. It is suggested that, at the time the plaintiff claimed to terminate the contract, O'Donnell had a lien on the goods for freight previously paid. It, however, appears that O'Donnell at that time owed the plaintiff a much larger amount for prior sales and no tender on the part of plaintiff was necessary.

The plaintiff, after the commencement of this suit against the defendant, received from O'Donnell payment for a portion of the goods claimed to have been converted by defendant, the plaintiff, as he testifies, stating at the time that a suit was pending against the defendant for the conversion of the goods, and that he would take the money and apply it on his claim. The appellant claims

that in taking this payment the plaintiff recognized the right of O'Donnell to receive the goods from the defendant, and so waived his claim against the defendant for the balance. Clearly, according to the plaintiff's evidence, there was no intent to waive his claim for the balance against the defendant. It should not be said as matter of law that there was any waiver, or any ratification of O'Donnell's authority to receive the goods. The defendant, by the reduction of the amount of the damages, gets all the benefit it is entitled to from the payment. We are referred to the case of *Green* y. *Clark* (5 Den. 497, 503), but the views of Chief Justice BEARDSLEY, as there stated, did not meet with the approval of a majority of the court.

It is further claimed that the plaintiff was guilty of *laches*, and that no proper demand was made. The plaintiff on the 6th of January, 1890, send a telegram to the freight agent of the defendant at Norwich, where the goods were, stating that the goods belonged to him and forbidding delivery except upon his written order. In reply to this the agent at Norwich sent a telegram to the freight agent of the defendant at Oswego, telling him to advise the plaintiff " that we cannot hold freight for Williams & O'Donnell if demanded on B. L. Tell him to send his orders thro' shipping office." This message was delivered to the plaintiff, as he testifies, on the evening of January tenth. On the eleventh the plaintiff wrote a letter to the Norwich agent saying that " I desire the goods re-shipped to Oswego, at once, and if desired I will advance the freight. Please advise me if the request will be complied with. Should you entertain any doubts as to my right to the possession of the goods, I will furnish you with evidence showing same." This was received by the agent on the eleventh, but was not answered. On the tenth he delivered the goods to Williams & O'Donnell, they presenting the bill of lading and paying the freight. At or before the delivery the agent told Williams & O'Donnell that he had received a telegram from Mr. Lester to hold the goods, and they replied that " they had had some difficulty with him and that accounted for that, but they would pay for the goods or the matter would be all straightened out — pay for the goods they said."

The agent at Norwich seems to have acted on the theory that the bill of lading was conclusive as to the right of Williams & O'Don-

nell to receive the goods, although he then had notice of the claim
of plaintiff. It is not now claimed by the defendant that this posi-
tion is tenable. Nor is it apparent that there was any delay or
*laches* on the part of plaintiff that could affect the ground or reason
on which defendant acted. It is conceded that plaintiff was the
owner of the goods, and he was entitled to the possession if the con-
tract between him and O'Donnell was terminated. The plaintiff in
that case had the right to treat the delivery as wrongful, and if so,
it amounted to a conversion (*McEntee* v. *The N. J. Steamboat Co.*,
45 N. Y. 37, 38), and no further demand was necessary. (*Dela-
mater* v. *Miller*, 1 Cow. 75; *Boyce* v. *Brockway*, 31 N. Y. 493;
*Campbell* v. *Parker*, 9 Bosw. 326.)

As the case now stands we find no good ground for reversing the
judgment.

HARDIN, P. J., and PARKER, J., concurred.

Judgment a    :med, with costs.