Hoffman, Justice:
I. The first question is upon the evidence. Is it sufficient to sustain the finding that the defendants were owners of the stock when the debt was contracted?
Upon the review of the evidence the Judge held that the referee was warranted by this evidence to find as he did. The Judge proceeded—
But it is insisted that certain evidence, tending to this point, was improperly admitted. Albert C. Ramsey was the Vice-President of the Company, and ten certificates of stock were originally issued to him on account of the defendants. They were issued on account of advances of funds—Rankin signed all the certificates. He says, “ the 375 shares in question was a part of the stock belonging to the ten of the original parties who advanced the funds to procure the grants. Col. Ramsey asked me for a certificate for Coleman and Stetson’s shares, and directed it to be made out in the name of Albert C. Ramsey & Co., together with other certificates for 375 shares each, to the other original parties: he gives evidence tending to show that it was, in fact, *194 issued for a specific purpose, other than to or for subscribers, who had paid cash for stock for which they had subscribed.
Although, of itself, it may not be evidence that the defendants were at the time the equitable owners of it, yet it was competent to prove that it was issued for them, as a compensation for advances they had made, and that they had accepted it accordingly. The further expression, “he directed me to send them to Mr. Draper, who,” he said, “ acted as the representative, or agent, of the original parties,” is proper so far as it shows a direction to send them to Mr. Draper, for their benefit.
It being otherwise proved that Mr. Draper, in fact, acted as their agent in that respect, it' would be unjust to an intelligent referee to conclude, that he might have been influenced in finding the fact of such agency, by this- statement.
I think we are therefore justified in saying, that this testimony could not have influenced the referee to the prejudice of the defendants.
The objection of defendants’ counsel to all the testimony in relation to the confirmation, by Coleman and Stetson, of the acts of Mr. Draper on their behalf, “ was too broad,” and the objection was properly overruled. If the answer of the witness, which immediately preceded the objection, and only that had been objected to, for aught we can see, the objection would have been sustained.
The fact that Draper, in the accounts which he rendered to the Company for advances made, included those made by the defendants, and that when the witness spoke to Mr. Coleman about his interest, the latter - referred him to Draper, had been proved without objection. It had also been proved that the certificate for this stock, had been previously sent to Mr. Draper, and that the defendants had procured a transfer of it to themselves, saying it was for their original interest.
An objection to such a confirmation, by Coleman and Stetson, of the acts of Draper, in relation to and as representing their original interest, as was evidenced by an actual transfer to themselves of the legal title to stock, originally issued for them, and on account of their advances, would not be well taken.
We hold in this case, that the matters of evidence which were admitted against the objection of the defendants, could not *195 have prejudiced their case with the referee, and that if it had not been received, his conclusions must necessarily have been the same.
II. Another point, on behalf of the defendants, is, that the plaintiff was bound affirmatively to prove that the drafts were made and accepted for the use of the Company, and that the purposes for which they were drawn were within the lawful powers of the Company; that the Company was indebted, and legally indebted.
The referee has found, that the bills were drawn by Ramsey, (and that he was the Vice-President,) on Ban kin, and that he was the President, “ and were accepted in writing by said Company on the 19th of December, 1853.”
We are of opinion, that this raises a presumption that the acceptance was made, not only for a sufficient consideration, but for legitimate purposes, within the objects and powers conferred by the charter.
The case of the Attorney- General v. The Life and Fire Insurance Company (9 Paige, 470) is ample authority for this proposition. That late excellent lawyer, Mr. George W. Strong, was one of the referees in the case, and held, upon a preliminary objection in the nature of a demurrer to a claim upon an instrument of the Company, in the form of a post note, that as the Company could issue such obligations, for some lawftd purposes, they were prima facie binding. Testimony was then given, which showed satisfactorily, that those produced could not have been issued for any such purpose. This reversed the duty, and the holders were then to prove the origin and consideration to have been legal, in which they failed.
The Chancellor confirmed this decision.
In Safford v. Wyckoff (4 Bill, 442) this decision is cited, and its principle acted upon.
McCullough v. Moss (5 Denio, 507) has been cited, as containing a contrary doctrine, and the head note seems to favor the counsel’s view. But a very careful examination satisfies me that there is nothing, even of language, in the opinions, to warrant this proposition. On the contrary, Senator Scott, who delivered the leading opinion, says:
“ The right of a corporation to make a promissory note for a *196 debt incurred in the course of its legitimate business, although it is not expressly authorized ” to contract in that form, appears to be conceded in our Courts—citing the case of the Life and Eire Company.
“ But it is unnecessary to examine whether the Rossie Lead Company had that power. I am satisfied that the note in question was given for purposes and object? unauthorized by its charter, and, therefore, not obligatory.” The learned Senator proceeds to examine the testimony which proved, this position.
In the present instance, the defendants have been so far from succeeding in showing, that the purpose for which the acceptance was given, was illegal, that the evidence rather tends to the conclusion that it was, in fact, made for rolling stock, purchased for the route.
The case of Moss v. Livingston (4 Comstock, 208) is distinguishable, as the draft was not drawn upon nor accepted by the corporation.
See further, The Royal British Bank v. Farquand (36 En. L. and Eq. Rep. 142).
III. The next question is, what is the effect of the judgment obtained against the Company?
The complaint alleges, that on the 8th day of June, 1854, a judgment was recovered in this Court against the said corporation on the said drafts, for the sum of $8,889 55, being the amount due thereon, with interest and costs. That an execution was in due form issued, and returned unsatisfied.
The answer states the want of information or knowledge as to these facts.
The plaintiff read in evidence the judgment roll, the execution, and sheriff’s return, stated in the complaint.
The referee finds the judgment to have been recovered, and the execution to have been issued, as stated in the complaint,
We are warranted in concluding this to have been an adverse judgment.
What is the relation which stockholders bear to a Company organized like the present ?
The provision which creates their liability is the 6th section of the Act of 1852. “ The stockholders shall be severally indivi *197 dually liable to the creditors of such corporation, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such corporation, until the amount of the capital stock is paid in, and a certificate thereof shall have been made and recorded as prescribed in the following section."
The referee has found that the capital stock had not been paid, and the certificate had not been made and recorded as prescribed.
By the 8th section, no stockholder shall be personally liable for any debt of the corporation, unless a suit shall have been brought against the corporation within six years after the debt became due; nor shall such a suit be brought unless an execution has been issued, and returned unsatisfied, in whole or in part (Sess. Laws, 1852, ch. 288).
This personal liability clause was first inserted in any public act of our state, in the statute relative to incorporations for manufacturing purposes, passed April 8th, 1811 (1 R. S. 1813, 247). By the 7th section of that act, for all debts which shall be due and owing by the Company, at the time of the dissolution, the persons then composing such Company shall be individually responsible, to the extent of their respective shares of stock. There was no clause in the act requiring a preliminary action against the corporation to recover the demand.
I have long considered that Slee v. Bloom, (14 John Rep. 456, 20 ibid. 669), had settled the law to be, that a judgment against the Company, as "well as an account stated between the creditor and its officers, was evidence of the debt, and was only to be invalidated upon a case properly made, by the pleading of a party questioning it, and that pleading sustained by proof. The Company had liquidated Slee’s account, and given a bond and warrant, on which judgment was confessed and perfected. Among the points taken by the present Chief Justice Oakley, for the stockholders sued individually, was one, that they ought not to be concluded by the settlement made by the trustees with the appellant, or by the judgment; and more especially as it was grossly erroneous, &c. (19 Johnson, 472.) Chancellor Kent, it will be remembered, had dismissed the bill on the ground that the Company had not been legally dissolved.
The decree of the Court of Errors reversed that of the Chan *198 cellor, and declared, that the respondents should pay the appellant, towards the discharge of his debt against the Company, the amount of their shares of stock of $100 on each share, or so much thereof as might be necessary to pay the appellant’s debt when ascertained.
The cause was remitted to the Court of Chancery to carry out this decree. An order of reference was made, and I acted as Master under it. A separate report was made, in which the judgment was stated and the previous liquidation of the account of Slee; that the decree had left the question open, how far the liquidation and judgment operated upon the case; that various allegations of error and fraud had been made as to the amount. “ And that the defendants were entitled, on the reference, to falsify and surcharge the account at large; specifying and going into proof of any error of such a nature and description as, upon a bill filed to open the account, if properly charged and duly proven, would be declared a sufficient error by the Court, to be amended under its direction.”
On exceptions, Chancellor Kent held, that the judgment, though binding on the Company in its corporate character, was not so upon the defendants, when charged in their individual capacity. The acts of agents or trustees of the company were not the acts of agents or trustees of the individual stockholders.
In the Court of Errors, the decision of the Chancellor upon the exceptions was reversed.
The principle was declared, that the trustees-were the agents to contract the debt. That the respondents could not impeach the consideration of the debt in any other manner,- nor on any other ground, than any principal can be allowed to do so. The decree was, that the condition of the bond, on which the judgment was founded, be deemed conclusive evidence of the amount due from the Dutchess Cotton Factory.
In the case of Freeland v. Lefferts, March 7th, 1842, before me as Assistant Vice Chancellor, the point was taken; and I held that a judgment against the Rossie Galena Company was prima facie evidence of the debt, in an action against a stockholder. The views expressed were as follows:
“ The bill is filed by a creditor of the Rossie Galena Company, after judgment recovered against the Company, and execution *199 returned to compel the three defendants to pay the debt, as stockholders of the Company.”
The first question is, as to the effect of the judgment recovered by the complainants against the Company.
The case "of She v. Bloom (20 Johnson Eep. 669) must control this question. The facts and decision in that case are familiar to me, having, as Master, made the report upon which the questions arose. Chancellor Kent held that the judgment was of no force at all, the corporation not representing the members in their individual liability. Chief Justice Spencer held, that the judgment was evidence, but did not, in itself, exclude the parties from showing fraud or illegality in obtaining it. I may be permitted to observe that this was, in principle, in accordance with the Master’s views in the case; but the Chief Justice also held that, upon the pleadings as they stood, and the proofs made, “ there was no foundation laid for impeaching the account, which had not been fully and satisfactorily met and repelled.”
The impeachment of the debt was made in the pleadings, entered upon in proof, and there was no reason or practice, justifying a further inquiry to the same matters, in the Master’s office.
It is difficult to use language more precise or more applicable to the present case than that of the Chief Justice. He says, (p. 685) “We must regard the judgment as a solemn admission merely, on the part of the Company, of indebtedness; but it is not, of itself, binding on the stockholders, if it was obtained by fraud, or founded on error. The appellant has stated, in his bill, the origin and consideration of his debt, and the manner of its liquidation, and it was competent for the respondents, in their answers, to have impeached it. But they were bound to have specified, in their answers, the particular facts on which they relied.”
But, it has been urged, that the decision in Slee v. Bloom, is not binding in this case, because the stockholders under this statute, are bound for the whole debt; but, under the general Manufacturing Act, only to the amount of their stock. This is only an extension of liability. I cannot see how it changes the force of the representative character. The present statute does not, in terms, make the judgment even prima facie evidence, although it requires a judgment first to be obtained against the Company. The Manufacturing Act was in no wise stronger, *200 being merely, “that for debts which shall be due and owing by the Company at its dissolution, the members shall be individually responsible, to the extent of their respective shares of stock.”
• Thus, then, the law seems to be, that á judgment against a company is primarily binding upon the members. But they may question it in any way, and upon every ground, showing-illegality or érror, when sued individually.
This privilege is sufficient to ensure justice to the stockholders* In the present case, neither of the defendants has stated, in his answer, any ground for impeaching the judgment or its consideration.
In Bonaffe v. Fowler (7 Paige 576), the judgment had been recovered two months after the time when the corporation was dissolved, as alleged in the bill, and was held not to be evidence óf a debt.
.In Moss v. Oakley, .2 Hill, 265, the Court held, that a judgment, under a statute similar in all respects, was conclusive as against the company, but only primd fade evidence of indebtedness against a- stockholder.. He was not a stranger to it altogether. Whether, he was at liberty to impeach it. on any other ground than that of fraud, it was not necessary to: decide. This was under the act concerning the Rossie Lead Mining Company. (Laws, 1837, p. 441, ch. 396.)
In Bailey v. Bancker, 3 Hill, 188, the Supreme Court treated stockholders under such statutes, as standing in. the character of partners as between themselves. But in Harger v. McCullough, (2 Denio, 119), the Court say, they have been spoken of (as in Moss v. McCullough, 5. Hill 131),ns guarantees or sureties. The Court then proceed to define their character to be; as to creditors, that of principal debtors. .The individuals were to be liable in the same, manner as if they had not been incorporated, and this is the doctrine of Corning v. McCullough, 1 Comstock, 47.
• The case of Moss y: McCullough, (5 Hill, 131,) decided this only, that when a note had been proven, given by the Company, and a judgment recovered upon it, evidence was admissible to prove anything which would impeach the note as wholly or partially invalid. The Judge, at the Circuit, had rejected such evidence because the judgment was conclusive..
, It is of importance to understand," that this was-decided, and nothing more. The reasoning of the learned Judges, and some *201 expressions do not seem to me reconcilable with previous cases; clearly they were not necessary for the decision.
A new trial in that case was ordered.
Upon that new trial the plaintiff proved the note, and the general agency of the "president, and also the judgment. Numerous questions arose, and were decided.
Upon a bill of exceptions, the Supreme Court refused a new trial. The case went to the Court of Errors, which reversed the decision, and awarded a venire de novo, (5 Denio 567). Senator Lott states, that he was satisfied that the note in question was given for purposes unauthorized by the charter, and therefore not obligatory.
The passage in his opinion, the only passage which bears upon this question, is the following. “A judgment by default in a suit which must have been commenced by service of process on the presiding officer, cashier, &c. cannot, without it is shown to have come” to the knowledge of the Board of Directors, have that effect, (the effect of charging the stockholder,) “especially as against a defendant who was not a stockholder, when it was obtained.”
Senator Putnam’s opinion does not touch this question. Senator Van Schoonhoven concurred in the views of Senator Lott.
Barlow & Talcott were for the affirmance of the judgment, which was for the plaintiff. It was reversed and a new trial ordered.
If Senator Lott’s opinion is taken as the judgment of the Court, it amounts to this, and this only. The consideration of the debt on- which a judgment against the Company was had, may be inquired into in an action against the stockholder. If it is by default, it amounts to nothing. The consideration being inquired into, it was illegal. Therefore the judgment for the plaintiff could not be sustained.
The case was again tried, and is reported upon a bill of Exceptions in 7th Barbour’s Reports, 279. Justice Willard examines all the opinions in the Court of Errors. The Court appears to have had several opinions which are not given in Denio’s Be-ports. The result was, that the judgment against the Company was held to be prima facie evidence of a debt against the defendant, open to be impeached for collusion or mistake.
*202 I have been favored with a communication from Mr. Justice Willard, in which he states, that this last decision did not go to the Court of Appeals, in consequence, as it was understood, of the defendant’s failure. But another suit was brought against Aurill, by Moss, for the same debt; and the evidence taken was substantially the same. The same point as to the judgment, was ruled below, and approved by the General Term in April, 1849. This was carried to the Court of Appeals, and the opinion in 7 Barbour, was printed as the opinion of the General Term. It was twice argued, and in June, 1853, the judgment was affirmed upon an equal division of the Court. Upon the previous argument in 1852, there had also been an equal division.
Tn this state of the question, in the highest tribunal, and with my own conviction that the doctrine of Slee v. Bloom, remains to this day unshaken, I am prepared to hold, that an adverse judgment against a company is presumptive evidence of the debt, in an action against a stockholder after execution returned. But we entirely concur, that when an acceptance by the Company of a draft is made out, and a judgment is had upon such acceptance, and no testimony is given to show illegality in the object, there is enough to charge the individual stockholder— being a stockholder at the date of the contract, and at the date of the judgment.
The judgment should be affirmed with costs.
Bosworth, J., concurred, in holding that the judgment should be affirmed. Affirmed accordingly.