.MEMPHIS CITY *v.* DEAN.

1. A question which is pending in one court of competent jurisdiction cannot be raised and agitated in another by adding a new party and raising a new question as to him along with the old one as to the former party. The old question is in the hands of the court first possessed of it, and is

to be decided by such court. The new one should be by suit in any proper court, against the new party.

2. A contract by a city corporation with an existing gas company, by which the corporation conferred upon the company the exclusive privilege for a term of years, and till notified to the contrary, of lighting the city with such public lamps as might be agreed on, and also the right to lay down its pipes and extend its apparatus through all the streets, alleys, lanes, or squares of the city, and which declared that "still further to encourage the company, it would take fifty lamps to begin with, to be extended hereafter as the public wants and increase of the city might demand, and such as might be agreed upon by the company and the city corporation," the company, in consideration of these grants, concessions, and privileges, binding itself to furnish to the city gas at half the price they charged their private consumers, does not give a right to the gas company exclusive of the city corporation's right to subscribe to the stock of a new gas company, whose object was to introduce gas into the same city.

APPEAL from the Circuit Court for the Western District of Tennessee, the case being thus:

In 1849 the State of Tennessee incorporated a company called the Memphis Gaslight Company. The charter provided as follows:

*Sec. 3.* It shall be the duty of said company to establish, within three years from the 1st of January, 1850, a gas manufactory within the city of Memphis, of sufficient capacity, to supply its corporate authorities and inhabitants with such public and private gaslights as may be required.

*Sec. 4.* To enable said company to establish said works, they are hereby authorized and empowered to lay down pipes and extend conductors and other apparatus through all or any of the streets, lanes, or alleys of the said city.

*Sec. 5.* The said company shall have the privilege of erecting, establishing, and constructing gasworks, and manufacturing and vending gas in the said city, by means of public works, for *the term of fifty years.* A reasonable price per thousand feet for gas shall be charged in the case of private individuals, *to be regulated by the prices in the other Southwestern cities;* and for public light such sums as may be agreed upon by the company and the public authorities of Memphis.

Another section provided, that if, at the end of twenty

years, the city resolved to buy the gasworks, it might do so; and a mode of fixing a fair price was prescribed for taking into consideration the value of the said gasworks, and the lands, buildings, utensils, *rights*, and interests, and everything thereunto appertaining.

The company being duly organized and set in operation, entered, in 1852, into a contract with the city authorities, by which these conferred upon it the *exclusive* privilege for twenty years, and until thereafter notified to the contrary, of lighting the city with such *public* lamps as might be agreed upon between the parties, and also the right to lay down its pipes and extend its conductors and other apparatus through *all or any* of the streets, alleys, lanes, or squares, and to exercise all the rights granted by its charter, without any other charge or tax by the city than upon the estimated value of their house and lot and one hundred dollars per annum.

The contract proceeded: " Still further to encourage the company, the city agree *to take fifty lamps to begin with, to be extended hereafter as the public wants and increase of the city may demand,* and such as may be agreed on by the company and the city; and the company, on its part, agree, in consideration of the said several grants, concessions, and privileges, to furnish the city, for the use of its public lamps, gas, at one-half the price they charged their private consumers."

In 1866, the State passed an act incorporating another gaslight company, to wit : " The Memphis Gayoso Gaslight Company," which established an office in Memphis, and went to work to lay down its gaspipes and extend its conductors and other apparatus through the streets of the city. The old company hereupon filed a bill in one of the State courts of chancery against the new company, setting forth the above facts, asserting that the privilege of furnishing gas to the city conferred by the act of 1849, incorporating the old company, was, by its very nature and purpose, an exclusive one, and that under the contract of 1852, it had been the intent of the city not only to vest in the old company the exclusive privilege of furnishing the public lights to the city, but, in fact, also to license it exclusively for a term of twenty years,

to make and sell gas for lights to the inhabitants by means of public works, and praying accordingly an injunction to the new company against laying pipes or establishing new works. On this bill, in the State court, a *preliminary* injunction was granted by the chancellor, so far as to restrain the new company from laying gaspipes so near to the pipes of the old company as to cause any injury to them, but denied so far as the bill sought to restrain the new company from proceeding with its works; the chancellor not seeing, as he said, that any exclusive privilege had been conferred on the old company.

Immediately after the decree, the city authorities of Memphis passed an ordinance authorizing the mayor to hold an election to test the sense of the voters of the city as to subscribing $250,000 to the stock of the new company; whereupon, on the following day, and before any election was held, Dean, a citizen of New York (the present appellee, and a large stockholder in the old company), filed a bill in this case in the court below, against the new company, and also against the city of Memphis, setting forth the act of incorporation of the old company, the company's organization and successful operation, with a statement of the outlays and trouble which organizing and putting it in such operation had cost; setting forth the contract of 1852; the act of incorporation of the new company; that this new company was laying down pipes and disturbing the ground where the pipes of the old one lay, and was injuring them; that it was asserting the right to manufacture gas by public works and sell the same to the inhabitants of Memphis in competition with the said company, and that this last had the exclusive privilege of supplying the corporate authorities and inhabitants with such public and private gaslights as might be required, which grant the General Assembly could not constitutionally revoke.

The bill set forth also the act of the city government authorizing an election, the bill in connection with that point, proceeding as follows:

"And the complainant apprehends that the influence of the

corporate authorities will be exercised upon the voters of the city, very few of whom comparatively are purchasers of gas, favorably to the said project, and that the said authorities will proceed to subscribe to the stock of the new company, and issue the bonds as contemplated in the said ordinance, and thus the defendants will consummate a great wrong to the complainant, to the great injury of the franchise of the old one."

Finally, the bill complained that the old company, of which the complainant alleged himself to be, perhaps, the largest stockholder, declined, at his request, to proceed in the courts against the rival company, and against the corporate authorities of Memphis, alleging that they had already filed a bill in the Chancery Court of the State, against the company, and obtained a partial injunction, but that they refused to proceed further.

The prayer was for an injunction restraining the city authorities from holding the election intended, or from subscribing to the stock, or issuing bonds, &c., and enjoining the new or Gayoso Company from laying pipes in the streets of Memphis, and from manufacturing gas and selling the same to the inhabitants.

To this bill the new or Gayoso company pleaded:

1. That it was not true, as alleged, that the Memphis or old company had refused to take the necessary legal steps to assert, and maintain the rights of complainant, but that, on the contrary, they had filed a bill in the State Chancery Court, wherein the same relief was sought as in the present bill, &c., &c.

2. That the said cause instituted in the said Chancery Court *was then still pending;* that the same identical matters were presented for adjudication as in the present bill; that the said court had full and ample jurisdiction; that a partial injunction had been obtained, and that the Gayoso or new company was still bound by the said partial injunction, *and was still subject to the further order of the said Chancery Court in the premises,* &c., &c. The record of the prior suit was tendered with the pleas, and substantiated the facts set forth in

them. The new company and the city of Memphis also put in answers. These admitted the facts stated by the bill as to the incorporation of the respective companies and their organization under the laws. They admitted also the contract between the old company and the city authorities, but they denied that the said contract gave any exclusive privilege except as to the *public* lamps. They also denied the power of the city to grant any such exclusive right, even if it had purposed to do so.

The cause was set down for hearing by consent of parties on the bill and exhibits, and on the answer of the new company and exhibits, and the answer of the city. And the court, after hearing, determined that the complainant was entitled to the relief prayed for, and decreed perpetual injunctions against the new company and the city, thus annihilating the new company. The cause was now before this court on appeal.

The questions considered by the court were :

1. Admitting that Dean, a mere individual stockholder in the older Memphis Gaslight Company, would have had a right to represent by himself, as he here assumed to do, the interest of the entire corporation, if the corporation had not itself brought suit in the State court, how far that suit, yet pending, precluded the institution of the present action; the suit in the State court being against the new corporation alone, and the present one being against both it and the city of Memphis?

2. It being decided that the suit in the State court against the new company did preclude the institution of the present one though against it *and the city*, whether—technical objections being disregarded—the contract of 1852 estopped the city from subscribing to stock in the new company.

*Mr. F. P. Stanton, for the appellants :*

1. Admitting that Dean, to establish an exclusive right in the old company, might have instituted suit against the new one, if the old company had refused to do so, yet here the pleas disclosed that there was no such refusal, but on the

contrary, the commencement of a suit. The injunction granted there was in full operation when Dean filed his bill in the court below; and it is evident that he went into the Federal court, in order to evade the jurisdiction of the local one; to appeal, in fact, from the decision of the State chancellor, who had refused to recognize the monopoly claimed by the old company. He made the mayor and aldermen parties to the proceeding, probably because he supposed that would enable him to avoid the plea of a prior action pending. But the fact of additional parties being included in the second suit does not alter the application of the principle. The test is the identity of the matters in issue, the rights claimed, and the relief sought. In both cases, the foundation of the proceeding is the same. Both rely upon the monopoly claimed by the elder gas company, the exclusive right said to be granted in their charter, to make and sell gas in Memphis. The proceeding against the city authorities depends wholly on this claim; for unless the exclusive right claimed can be established, there is no pretence of any right in a citizen of New York to interfere with the proposed acts of the mayor and aldermen. If that exclusive right can be established, then the injunction against the city would be useless, inasmuch as an injunction against the new company would suspend their work, in spite of the people or public authorities of Memphis.

2. The matter of exclusive right under the charter had been therefore passed on primarily, or was pending in the State court, a competent tribunal. This court would not interfere. Nothing therefore remained for the complainant but the contract of 1852, and it was plain from the terms of that contract, that under it all exclusive right was confined to supplying the public lamps, and this for but a limited term. Until the city should violate the contract, which it was not alleged that it had yet done, no right of action could lie against it.

*Messrs. McRea and Humes, contra:*

1. The plea denying the allegation of the bill that the old or

Memphis Gaslight Company had refused to take the necessary legal steps to assert and maintain the rights of the complainant, and the assertion in the plea that there was a former suit depending for the same cause of action, are answered by the fact that the suit begun in the State court by the old company, was brought against the new or Memphis Gayoso. Gas Company alone. That bill only set up the claim of the old company to the exclusive privilege, and, only asked an injunction to stop the progress on the streets of the rival company. The action of the other defendant—the city authorities—was taken after the disposition of the other cause in the State court, and was a new grievance. The present bill alleged that without reference to any exclusive privilege in the old company under its charter, the action of the city authorities is a fraud upon the contract made by them with the complainant's company; that the action of the board gives strength and credit to the other defendant, which enables it to prosecute its wrongs. This is enough to take the case from the objection of a prior suit pending, or *res judicata;* and to leave us the benefit of the principle *quia timet;* as a preventive remedy, one most beneficial to both parties, and to be therefore encouraged.

2. The contract of 1852 is exclusive not only of the right to supply public lamps for a certain term, but also of the right to *encourage* a rival to come into the city within the term, for after beginning with fifty lamps, it promises in order "*still further to encourage the company,*" that as the city extends itself, it will increase the number of lamps for which gas shall be furnished. It gives the old company, moreover, "the right to lay down its pipes and extend its conductors and other apparatus through *all* of the streets, alleys, lanes, or squares of the city." This is necessarily exclusive. Gaspipes must be laid down so as to occupy an inclined plane, and cannot be laid otherwise. This necessity arises from two causes: first, the gas being lighter than common air, its tendency is to rise, and hence the difficulty and great pressure required to force it through pipes descending from the reservoir. Secondly, the gas, in its passage from the works

or reservoir, carries with it vapor of water; this vapor, in its passage through the pipes underground, is condensed, and if no provision were made, the water would eventually obstruct the pipes and stop the passage of the gas. Therefore drip-boxes are placed at intervals to collect the liquor caused by condensation. The pipes must all incline into these drip-boxes to enable the water to drain into them. Thus the network of pipes is placed in a plane inclining to the drip-boxes and the reservoirs. Hence the absolute necessity that the company should have the exclusive use and occupation of the streets.

Moreover, the subtle character of gas renders it difficult to convey it through pipes without serious loss from leakage, and requires that the pipes should be laid on solid earth and remain perfectly undisturbed. The easement of the old company in the streets of the city would obviously be impaired by yielding to another company the same easement, and the charter of the latter must impair and destroy the obligation of the contract, made in 1852, with the former.

[In addition to the points thus raised, the counsel on both sides argued largely—asking the opinion of this court upon it—the question of the exclusive right of the old or Memphis Company under its *charter;* Mr. *Stanton* relying on the constitution of Tennessee, which he stated in section 22 of its declaration of rights declared "that perpetuities and *monopolies* were contrary to the genius of a free State, and should not be allowed," and on the *Bridge Proprietors* v. *Hoboken Company*, and *The Turnpike Company* v. *The State*,\* late cases in this court, and to earlier ones, referred to in these cases, to show that neither on principle nor authority could the claim be sustained; and *Messrs. McRae and Humes* referring to the *Binghamton Bridge Case*,† to show that grants of exclusive privileges by legislatures were entirely legal, and that no strained or artificial construction would be made to defeat them if intended to be given; and that here the nature of the enterprise, one new, great, and hazardous in 1849, re-

---

\* 1 Wallace, 116; 3 Id. 210.                    † 3 Id. 74.

quiring to be encouraged and "still further encouraged," the facts that the charter was, by its words, but a limited term; that the *duty* of supplying the city and its inhabitants was made a condition of the privileges granted, imposed, and assumed, and so implied a correlative obligation to take; that the price of the gas was to be reasonable and regulated by the price in other and larger cities, where it might cost much less to manufacture; that the works were called "public works;" that the legislature had reserved a right to compel the old corporation to sell out on paying fair value for its property and *rights*, a reservation which would have been useless if they could set up another company, and a reservation which, to suppose was inserted with such a purpose secretly entertained, to set up such other company, would be discreditable to the city against which such supposition was raised.]

Mr. Justice NELSON delivered the opinion of the court.

The judgment of the court in the case of *Dodge* v. *Woolsey*,* authorizes the stockholder of a company to institute a suit in equity in his own name against a wrong-doer, whose acts operate to the prejudice of the interests of the stockholders, such as diminishing their dividends and lessening the value of their stock, in a case where application has first been made to the directors of the company to institute the suit in its own name, and they have refused.  This refusal of the board of directors is essential in order to give to the stockholder any standing in court, as the charter confers upon the directors representing the body of stockholders, the general management of the business of the company.  There must be a clear default, therefore, on their part, involving a breach of duty, within the rule established in equity, to authorize a stockholder to institute the suit in his own behalf, or for himself and other stockholders who may choose to join.  The plea in abatement in the record is founded upon this view of the law.  It not only denies the refusal, but

* 18 Howard, 331–345.  See also Bronson v. La Crosse Railroad Co., 2 Wallace, 283.

avers the institution of a suit in a court of competent juris-
diction, and in which the ground of complaint is substan-
tially the same as set forth in the complainant's bill. This
is a plea to the person of the complainant. Pleas to the
person, says Mr. Daniel,* like pleas to the jurisdiction, do
not necessarily dispute the validity of the rights, which are
made the subject of the suit, but object to the plaintiff's
ability to sue, or the defendant's liability to be sued respect-
ing them. And Judge Story† observes, "They object to the
plaintiff that he is by law disabled to sue in a court of jus-
tice, or that he cannot institute a suit alone, or that he is not
the person he pretends to be, or that he does not sustain the
character he assumes." These are properly pleas in abate-
ment, or at least in the nature of abatement.‡

It is insisted, however, on the part of the learned counsel
for the appellee, that the suit in the State court did not
cover all the grievances set forth in his bill, as the directors
were required to proceed against the city of Memphis, which
was not a party defendant in that suit, but is in the present
one. The charge in his bill is, that the city authorities
passed an ordinance authorizing the mayor to hold an elec-
tion to test the sense of the voters of the city as to the
propriety of subscribing $250,000 to the stock of the Mem-
phis Gayoso Company, and he apprehends that the influence
of the corporate authorities will be exercised on the voters
favorable to the company, and will proceed to subscribe to
its stock; and further, that the city had entered into a con-
tract with complainant's company to furnish the lamps of
the city with gas for twenty years, and that this action of
the city is in violation of that contract; and the bill prays
that the city may be enjoined from holding the election or
subscribing to the stock. This is the branch of the case
relied on to show that the suit in the State court was not a
compliance with, or a fulfilment of, the request of the com-
plainant to the directors of the Memphis Gaslight Company
to institute legal proceedings.

---

\* 1 Chancery Practice, 744.          † Equity Pleading, 545.
‡ Ib. 549, and note 2.

But, admitting all this to be true, it furnishes no valid ground for making the Memphis Gayoso Gas Company a party, and agitating over again the same question which was pending in the State court, namely, whether or not the Memphis Gaslight Company had an exclusive right to furnish the city of Memphis with gas. There is no necessary connection between that suit, or the subject-matter involved in it, and the one against the city. The former turns upon a construction of the charter of the Memphis Gaslight Company. The latter, upon a written contract between this company and the city. The question here has no connection with that of the exclusive privileges of the company under the charter. If any suit was desired, or advisable, against the city, it should have been a separate one, founded on the contract.

Besides, the suit against the city was premature. Until the question was decided whether or not the Memphis Gayoso Gas Company was valid, and had a right to establish itself in the city of Memphis, the suit against the city was founded on a hypothetical case. If held by the State court, on the final hearing, that the Memphis Gas Company had the exclusive right, the existence of the other company must cease, and the suit against the city would be superfluous.

The suit is premature, also, for the reason it is founded on a contingency, that a majority of the voters of the city will vote in favor of a city subscription to the stock. The bill seeks to enjoin the city from holding the election, for fear a majority may favor subscription; and then, that the city will subscribe. The complainant should have waited till after the result of the election, and, if it had been against making any subscription, no suit would have been required; if in favor, it would have been time enough to have filed the bill.

But, over and beyond all these objections, we are satisfied that there is nothing in the provisions of the contract that can be made available to estop the city from subscribing to the stock. It secures to the complainant's company the ex-

clusive privilege of supplying the public lamps in the streets of the city with gas for twenty years, at one-half the price which is charged to private persons. This is the essence of the contract. There are other details to enable the company to fulfil its portion of the stipulations, such as the privilege of laying down their pipes in the streets, and of exercising all the rights under the charter within the limits of the city, without any other tax or charge than upon the estimated value of their house and lot, and one hundred dollars per annum. The city agrees to take fifty public lamps to begin with, to be extended thereafter according to the public wants. All the obligations, whatever they may be, to be found in the contract on the part of the city are binding upon it, and if broken, the courts will afford the proper remedy. The establishment of another company therein will not change its nature or obligation, much less abrogate it. To this extent the city is bound, but no further. There is neither an express or implied obligation not to take stock in any other company.

The idea that the subscription to the stock of the new company would aid or encourage its establishment in the city, and hence would operate as a violation of the contract, finds no support in that instrument.

The result of our opinion is, that the only question that it was competent for the complainant, as a stockholder of the Memphis Gaslight Company, to compel the directors to present to a court of justice, was that involving its exclusive right, under the charter, to furnish the city of Memphis with gas; and as that had been presented to a court of competent jurisdiction, in a suit then pending, he is disabled, according to the settled rule on this subject, from instituting a suit in his own name in another court.

DECREE BELOW REVERSED, remitted to the court below, with directions to dismiss the bill.