## BISSIT *v.* KENTUCKY RIVER NAVIGATION Co. and others.*

*(Circuit Court, D. Kentucky.* June, 1882.)

1. CORPORATIONS—CREDITOR'S BILL TO SUBJECT UNPAID SUBSCRIPTIONS.

A creditor who has obtained a judgment against a corporation, and is unable to realize thereon upon execution, may file a bill in equity against stockholders to subject the unpaid balance due on their subscriptions to the stock of the corporation; but where the complainant is also a stockholder, he must contribute *pari passu* with the defendant stockholders towards the liquidation of his demand against the corporation.

2. SUBSCRIPTION TO STOCK OF KENTUCKY RIVER NAVIGATION COMPANY BY CERTAIN KENTUCKY COUNTIES — VALIDITY — RATIFICATION — ESTOPPEL — STATE DECISIONS.

In a suit brought in the circuit court by a creditor of the Kentucky River Navigation Company, to subject subscriptions made to its stock by Estill, Owsley, and Jessamine counties, Kentucky, under the act of March 1, 1865, passed by the Kentucky legislature, incorporating said company, which authorized the county courts of the several counties bordering upon or interested in the navigation of said river to subscribe on behalf of their respective counties to the capital stock of said company, and levy and collect a tax to pay the same, *held,* that the decision of the court of appeals of Kentucky in the cases of *Mercer and Garrard Counties v. Ky. Riv. Nav. Co.* 8 Bush, 300, was an affirmance of the constitutionality of said act, and that said decision and the construction of said act by said court, (being the highest court of said state,) wherein it was held that subscriptions could only be made under the act through orders of the county courts, made and entered of record by the courts when sitting in their organized capacity, which, in themselves, amounted to completed contracts of subscriptions, and that subscriptions made by commissioners, appointed by said county courts for the purpose, under an order,—in one case declaring "that $25,000 be directed to be subscribed," and in the other "that $100,000 shall be subscribed,"—were not valid, are binding on the circuit court; and *held, further,* that the subscriptions of Estill and Owsley counties come within said rule, and are therefore invalid; but as to Jessamine county, *held,* that whether the original subscriptions were binding or not, the subsequent conduct of the parties was such a ratification of and acquiescence in the subscriptions as to estop said county to deny the validity thereof.

3. CORPORATIONS — STOCKHOLDER'S LIABILITY — COLLUSIVE AND FRAUDULENT JUDGMENT AGAINST CORPORATION NOT CONCLUSIVE AS TO STOCKHOLDERS.

In a suit by a judgment creditor of a corporation (who was also a stockholder) to subject unpaid subscriptions made by other stockholders, it appeared that, for some time prior to the rendition of complainant's judgment, the defendants and the other stockholders of the corporation, except the complainant, had denied the validity of their subscriptions, and refused to participate in the management of the corporation, and thereafter the complainant, by virtue of the stock he held, had assumed the exclusive management and control of the corporation and its affairs, and elected its board of directors; that the action he brought against the corporation, in which his judgment was rendered, was

*Reported by J. C. Harper, Esq , of the Cincinnati bar.

defended by one of the directors he had elected; that it was brought to trial three months and six days after its commencement, was tried upon a false copy of the contract sued on, in the absence of material and important witnesses for the defense, and resulted in a judgment largely in excess of the amount due. *Held*, that said judgment was collusive and fraudulent, and not conclusive against defendant stockholders of the amount due complainant.

In Equity.

*William Lindsay* and *Richards & Baskin*, for complainant.

*Isaac Caldwell* and *Wharton & Ray*, for defendants.

BAXTER, J. The act of March 1, 1865, entitled "An act to incorporate the Kentucky River Navigation Company," under which the defendant corporation organized, authorized the county courts of the several counties bordering upon or interested in the navigation of said river to subscribe for and in behalf of their respective counties to the capital stock of said company, and levy and collect a tax to pay the same. County subscriptions were accordingly made to the amount of $775,000. These were supplemented by a subscription of $150,000 by the city of Louisville, $100,000 by Bissit & McMahon, and $2,300 by 23 other individuals. Thus fortified with subscribtions aggregating $1,027,300,—which the company then believed to have been duly made pursuant to the law,—the company entered into a contract with Bissit & McMahon, of which firm complainant was a member, whereby said firm undertook and agreed to do all the work contemplated by the company's charter, and specified in said contract, for the gross sum of $1,000,000, to be paid in monthly installments upon the estimates of the company's supervising engineer, less 10 per cent. to be retained as a guaranty for the completion of the work. By an agreement between themselves, to which the company was in no way a party, McMahon soon thereafter sold his interest in the contract to complainant, who began work thereunder in June, 1869, and continued the same until December, 1870. But in the mean time a disputation arose in regard to the validity of said county subscriptions. Suits followed, resulting in a decision by the court of appeals in the cases of *Mercer and Garrard Counties* v. *Kentucky River Nav. Co.* 8 Bush, 300, holding that the subscriptions claimed to have been made by said counties had not been made in conformity with the requirements of the statute conferring the authority, and that the same were invalid and not binding upon them. Thereupon the city of Louisville, and all the counties in whose behalf subscriptions had been made, denied the validity of the same, and refused from that time forward to further participate as shareholders in the control of the corporate business. But complainant, in virtue of his ownership of

the $100,000 of stock subscribed by Bissit & McMahon, as aforesaid, assumed exclusive control of the corporation, and, through a board of directors, which he from time to time selected, kept up its organization until after the recovery by him of the judgment at law, to be hereafter more particularly referred to.   During the time the complainant was thus in exclusive possession and control of the company's business he began a suit at law in this court, in which he demanded from said corporation $104,850.90, with interest thereon for work and labor alleged to have been done and material furnished under and pursuant to his contract, and $100,000 for profits claimed to have been lost by reason of the suspension and discontinuance of the work. In this suit he recovered a judgment for $132,500 and costs; and failing to realize thereon, after the due and regular issuance of an execution for that purpose, he filed his bill in this case, in which he charges that the defendants Estill, Owsley, and Jessamine counties were indebted to the Kentucky River Navigation Company for subscriptions respectively made by them to the capital stock thereof; the first, in the sum of $25,000; the second, in the sum of $50,000; and the last in the sum of $100,000.   And upon these allegations complainant prays for a decree to compel said counties to pay their several subscriptions to the company, to the intent that the proceeds when realized may be applied in liquidation of his judgment.

It is clear if the corporation is indebted to the complainant, and that the defendant counties are indebted, as alleged, to the corporation, the complainant is entitled to the relief prayed for.   But the defendants insist (1) that the legislature possessed no constitutional power to authorize such subscriptions; (2) if it had such power their alleged subscriptions were not made pursuant to the law; and (3) if the same were made in conformity with the statute, the Kentucky River Navigation Company was not, at the time complainant recovered his judgment, or afterwards, indebted to the complainant anything, and that said judgment was collusively and fraudulently obtained, and that it is not conclusive of their rights.

The questions thus presented by the first and second defenses have been considered and passed on by the court of appeals in the cases of *Mercer and Garrard Counties, supra.*   The first impression of the court was adverse to the constitutionality of the act under which the subscriptions were made, and an opinion to that effect was prepared and announced.   But upon a rehearing, the court, three of the four judges constituting the court concurring therein, abandoned the position on which they rested their first decision, and placed their second

decision on the ground that the subscriptions, the validity of which were involved in those cases, had not been made by the county courts in accordance with the requirements of the act authorizing the same, and were, therefore, not binding upon said counties. In this connection the court said that subscriptions could only be made under the act through orders of the county courts, made and entered of record by the courts when sitting in their organized capacity, which, in themselves, amounted to completed contracts of subscriptions; and that subscriptions made by commissioners in the one case under authority of an order of court declaring "that $25,000 be directed to be subscribed," and in the other, "that $100,000 shall be subscribed," were not valid and obligatory on the counties in whose behalf the same were made. The reasoning of the court throughout is a clear and distinct recognition of the constitutionality of the law. The declaration that valid subscriptions could *only* be made through and by means of orders made and entered of record by the county courts, etc., is, in view of the history of those cases, equivalent to a positive declaration that such subscriptions might have been made in that way, and the same necessarily implies that the statute by which such subscriptions were authorized was and is a constitutional statute.

Such, at least, is the natural and reasonable interpretation of the language employed, and this construction of the state constitution by the highest court of the state is conclusive on this court.

The constitutional question out of the way, we are brought to the consideration of the second defense, to-wit: Do the records of the county courts of the defendant counties evidence completed contracts of subscription, within the purview of the act authorizing the same, as construed by the court of appeals? Herein lies the vital point of this controversy. If the orders made by these courts constitute valid subscriptions, within the meaning of that act as construed by the court of appeals, the complainant is entitled to relief; otherwise, his bill will have to be dismissed.

We have not the time to enter upon an elaborate discussion of the details. It must suffice to say that, in the judgment of this court, the records of Estill and Owsley county courts are in nowise materially different from the records of Mercer and Garrard county courts, which were held to be insufficient to bind said counties; and as nothing has since transpired to cure the defects therein, the complainant's bill will, as to these two counties, be dismissed, with costs.

But the case as to Jessamine county cannot be so summarily disposed of. The county court of this county, at its September term,

1865, "ordered that the sum of $35,000 be subscribed" to the capital stock of the defendant company, and appointed John S. Brannaugh a commissioner to make the subscription on the books of the company; and at its November term, 1867, it was further "ordered that John S. Brannaugh be and is hereby authorized and directed to subscribe the further sum of $65,000 to the stock" of said company, subject to certain conditions therein stated. The subscriptions thus authorized and directed were accordingly made by the commissioner named on the books of the company, and the same were accepted, with the conditions annexed, and notice thereof communicated to the court.

Now it may be conceded that these orders do not, when measured by the reasoning of the court of appeals in the cases to which reference has been had, constitute completed and valid subscriptions on the part of the county. But it is manifest that the county court and the defendant company understood the legal effect thereof differently. It appears that after the subscriptions had been made by the commissioner, Brannaugh, in behalf of the county, and accepted by the company and notice thereof given to the court, the latter proceeded to make and enter of record several orders clearly and distinctly recognizing the validity of said subscriptions. These were followed by an agreement between the court and the company to pay in *five* instead of *four* annual installments, and an order was duly made and entered of record levying an *ad valorem* tax of 50 cents on each $100 worth of the taxable property of the county for the payment of the first installment; and more than $18,000 of the tax thus levied was collected, and, by the express order of the court made and entered of record in November, 1869, paid by the county treasurer to the defendant company in part discharge of the county's subscription. For a time the county claimed and exercised the rights incident to the ownership of stock and participated in the management of the corporate business. Such was the practical construction of the effect of the action had in the premises by the parties thereto. The county courts of the several counties authorized to subscribe to the enterprise in question were invested by the act with power to act for their respective counties, and to determine whether subscriptions should or should not be made. The power to make a subscription necessarily carries with it the power to complete an incompleted contract to subscribe; and if the original orders under which Brannaugh acted are not, within themselves, completed subscriptions, the subsequent construction thereof by the county court, acquiesced in by the defend-

ant company, is such a recognition, ratification, and partial execu-
tion thereof as, in the judgment of this court, ought to estop both
parties thereto from denying the validity and obligatory force of said
subscriptions. It follows that the defendant Jessamine county is a
stockholder in the defendant company, and, as such, amenable to all
the liabilities incident to that relation.

What, then, is the extent of its liability in this case? The answer
to this question involves two inquiries: *First*, we must ascertain, if
we can, how much is due from the defendant corporation to the com-
plainant; and, *secondly*, the proportion thereof justly chargeable to
Jessamine county.

The complainant insists that, having obtained a judgment at law
against the defendant corporation for $132,500, and costs, the same
is conclusive, as against the stockholders, of the amount due him,
and that Jessamine county ought to be made to contribute to the
extent of its unpaid subscriptions towards the liquidation of the com-
plainant's demand. But we do not, upon the facts of this case, con-
cur in this view of the complainant's rights. The county took
part, as a stockholder, in the management of the corporate busi-
ness until the decision in the *Mercer and Garrard County Cases* was
made. But upon the promulgation of that decision Jessamine
county, in common with all the other counties which had taken
steps to subscribe stock in said corporation, disclaimed its subscrip-
tions, and thereafter refused to participate further in perpetuating
its organization or supervising its business. The complainant, who
owned $100,000 of stock, subscribed by Bissit & McMahon, assumed
the sole and exclusive control of said corporation, and from that
time forward managed and controlled its business through a board
of directors elected by himself. Having thus assumed the re-
sponsibility, he was bound to due diligence in the execution of it.
But we think he failed to discharge the duty thus voluntarily under-
taken. The suit in which he recovered his judgment was prose-
cuted by complainant through counsel employed for the purpose,
and defended by one of the directors chosen by him. In short,
it was prosecuted on the one side by an attorney selected by
him, and defended by a board of directors which he had chosen
and placed in position, brought to trial just three months and six
days after its institution, tried upon a false copy of the contract, sued
on in the absence of material and important witnesses for the defense,
and resulted in a judgment largely in excess of the amount due. We
are satisfied that the complainant's judgment, to put it mildly, was

unfairly obtained, and for an amount greatly in excess of the sum due. When this was accomplished this suit was begun, in which Jessamine county was, for the first time, brought before the court and afforded an opportunity to be heard. It is bound, as a stockholder, to contribute for the payment of complainant's demand, and ought, we think, notwithstanding complainant's judgment, to be heard in regard to the amount due from the defendant corporation to the complainant. An account will be necessary to ascertain what this is. The matter will therefore be referred to James S. Pirtle, Esq., who is required, as a special master of this court, to consider the evidence on file, and such other testimony as the parties hereto, or either of them, shall adduce touching the controversy, and to report— *First*, the amount, if anything, due from the Kentucky River Navigation Company to complainant for the work and labor done and material furnished under and pursuant to the contract sued on at law, to which reference is made in the pleadings with interest from the time the same ought, by the terms of said contract, to have been paid.

But as the complainant is himself a stockholder, he must contribute *pari passu* with Jessamine county to the payment of the balance that shall be thus found due him. The master will therefore ascertain and report, *secondly*, the amount of stock subscribed by the complainant and said county, respectively; the amount paid thereon and the dates of such payment, calculating interest and adjusting the accounts so as to require each party to pay towards the complainant's demand in proportion to the amount of stock severally subscribed by them. All other questions are reserved until the coming in of the master's report.

----

The master to whom the matter was referred, found, on the basis of the foregoing opinion, due to complainant, including principal and interest, the sum of $25,274.68, of which one-half, $12,637.34, was charged to Jessamine county and the other moiety to complainant.

As to the first point in the foregoing opinion: Creditors of an incorporated company who have exhausted their remedy at law can, in order to obtain satisfaction of their judgment, proceed in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription, although no account is taken of the other indebtedness of the company, and the other stockholders are not made parties; although, by the terms of their subscriptions, the stockholders were to pay for their shares "as called for" by the company, and the latter had not called for more than 30 per cent. of the subscriptions. *Hatch* v. *Dana*, 101 U. S. 205.

As to decisions of state courts as rules of decision in United States courts,

the supreme court delivered an interesting opinion January 29, 1883, in the case of *Burgess* v. *Seligman*, 2 Sup. Ct. Rep. 11. The syllabus, upon that question, is as follows:

The supreme court of Missouri, after the transaction in controversy took place, and after the circuit court had decided this case, made a contrary decision against the same stockholders, at the suit of another plaintiff, and this decision being urged as conclusive upon the federal courts, *held*, that this court is not bound to follow the decision of the state court in such a case.

The federal courts have an independent jurisdiction in the administration of state laws in cases between citizens of different states, co-ordinate with, and not subordinate to, that of the state courts; and are bound to exercise their own judgment as to the meaning and effect of those laws. 

But since the ordinary administration of law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established, which become rules of property and action in the state, and have all the effects of law, especially with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is

· But where the law has not been thus settled it is the right and duty of the federal courts to exercise their own judgment, as they always do in reference to the doctrines of commercial law and general jurisprudence; and when contracts and transactions have been entered into and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation of the law applicable to the case may be adopted by the state courts after such rights have accrued.

But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt.

Acting on these principles of comity, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts.

As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals, which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication.

---

### The Effect as to Stockholders and Officers of a Judgment against the Corporation.

1. GENERAL PRINCIPLES. A judgment is conclusive as between parties and privies thereto of all matters of controversy determined by it. Every per-

son whom the parties, plaintiff or defendant, represent in the suit, are bound as privies by the judgment rendered in it. 2 Smith, Lead. Cas. [*684–5;] Morawetz, Priv. Corp. § 383. A corporation represents and binds the stockholder in all matters within the limits of its corporate power, transacted in good faith by its officers, and their discretion cannot be controlled by the stockholders. *Oglesby* v. *Attrall*, 105 U. S. 605; *Baily* v. *B., L. & C. Junc. R. Co.* 12 Beav. 433; *Walker* v. *M. & O. R. Co.* 34 Miss. 245; *Ellison* v. *M. & O. R. Co.* 36 Miss. 572; *Durfee* v. *Old Col., etc., R. Co.* 5 Allen, 242; *Came* v. *Brigham*, 39 Me. 35, 38; Morawetz, Priv. Corp. §§ 236, 382, 387; High, Extr. Leg. Rem. § 278; High, Receivers, §§ 288, 289, 294. Among these fundamental powers are those of bringing and defending suits affecting the rights and obligations of the corporation, in which it represents and binds the stockholder as fully as in the making of contracts. *Farnum* v. *Ballard, etc., Shop*, 12 Cush. 507; *Lane* v. *Weymouth School-dist.* 10 Metc. 462; *Johnson* v. *Somerville, etc., Co.* 15 Gray, 216; *Graham* v. *Boston, etc., R. Co.* 14 Fed. Rep. 753, 762; *Samuels* v. *Holladay*, 1 Woolw. C. C. 400; *Re Mercantile Discount Co.* L. R. 1 Eq. 277; *Newby* v. *Oregon Cent. R. Co.* 1 Sawy. 63; Morawetz, Priv. Corp. §§ 383, 388. Nor can a stockholder interfere in such proceedings, except in cases where the officers of the corporation refuse to sue or defend for it, when, upon proper application in equity and showing of such refusal, the stockholder, in behalf of himself and all other stockholders, may sue or defend for it. *Memphis City* v. *Dean*, 8 Wall. 73; *Cook* v. *Berlin Mills Co.* 6 Reporter, 188; *Davenport* v. *Dows*, 18 Wall. 626; *Taylor* v. *Holmes*, 14 Fed. Rep. 498; *Detroit* v. *Dean*, 1 Sup. Ct. Rep. 560, 564; *Bacon* v. *Robertson*, 18 How. 480. The better-considered and later cases "limit this right to cases where the directors are guilty of a fraud or a breach of trust, or are proceeding *ultra vires.*" *Hawes* v. *Oakland*, 104 U. S. 450; [S. C. 21 Am. Law Reg. (N. S.) 252; 14 Cent. Law J. 288;] *Marsh* v. *Eastern R. Co.* 40 N. H. 548; *Peabody* v. *Flint*, 6 Allen, (Mass.) 52; *Brewer* v. *Boston Theater*, 104 Mass. 378. In *Hawes* v. *Oakland*, *supra*, the supreme court of the United States held that, in order to entitle a stockholder to sue in behalf of the corporation, there must be shown: "(1) Some action or threatened action of the directors or trustees which is beyond the authority conferred by the charter, or the law under which the company was organized; or (2) such a fraudulent transaction, completed or threatened by them, either among themselves or with some other party, or with shareholders, as will result in serious injury to the company or the other shareholders; or (3) that the directors, or a majority of them, are acting for their own interests, in a manner destructive of the company, or the rights of the other shareholders; or (4) that the majority of shareholders are oppressively and illegally pursuing, in the name of the company, a course in violation of the rights of the other shareholders, which can only be restrained by a court of equity. (5) It must also be made to appear that the complainant made an earnest effort to obtain redress at the hands of the directors and shareholders of the corporation, and that the ownership of the stock was vested in him at the time of the transactions of which he complains, or was thereafter transferred to him by operation of law." See, also, *Detroit* v. *Dean*, 1 Sup. Ct. Rep. 560, (Jan. 22, 1883.)

2. The Judgment Conclusive. In such cases as that decided by Judge Baxter in the opinion above reported, viz., suits in the nature of creditors'

bills to subject a stockholder's indebtedness, to the corporation on account of *unpaid subscriptions to stock*, the authorities are uniform in holding that in the absence of fraud in their rendition, judgments against the corporation are conclusive against stockholders as to the amount and validity of the creditor's claim. Morawetz, Corp. § 619; *Henry* v. *Vermillion, etc., R. Co.* 17 Ohio, 187. Even in New York, where the decisions have been conflicting in actions to charge stockholders on their *statutory liability*, the court of appeals has recently held, that in suits to subject unpaid subscriptions, the stockholders were concluded by the judgment against the corporation. *Stephens* v. *Fox*, 83 N. Y. 313. In *Henry* v. *Vermillion, etc., R. Co. supra*, the court says: "Even if there were irregularities in these judgments, and fraud in giving them, or mistake, by accident or otherwise, in the amount, it would constitute no defense, either in whole or in part, in these cases. The judgments cannot be impeached collaterally. Between the parties who had a legal right to fix the amount, it has already been done; and nothing is left as against the debtors of the company but to determine the amount due from them." But the judgment could probably be impeached for fraud, by cross-bill or cross-petition, in the action upon it. *Conway* v. *Duncan*, 28 Ohio St. 102; *Bank of Wooster* v. *Stevens*, 1 Ohio St. 233.

In actions to enforce the *statutory liability of stockholders*, judgments against the corporation have been held equally conclusive. *Donworth* v. *Coolbaugh*, 5 Iowa, 300; *Came* v. *Brigham*, 39 Me. 35; *Merrill* v. *Suffolk Bank*, 31 Me. 57; *Milliken* v. *Whitehouse*, 49 Me. 529; *Wilson* v. *Pittsburgh, etc., Coal Co.* 43 Pa. St. 424; *Gaskill* v. *Dudley*, 6 Metc. 546; *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385; *Johnson* v. *Somerville, etc., Co.* 15 Gray, 216; *Holyoke Bank* v. *Goodman Paper Manuf'g Co.* 9 Cush. 576; Thompson, Liab. of Stockh. § 329 *et seq.*; Freeman, Judgm. § 178. See *Boyd* v. *Hall*, 56 Ga. 563; Bigelow, Estop. (3d Ed.) 89.

In *Gaskill* v. *Dudley, supra*, D. recovered a judgment, by default, against a school-district, in an action on a contract with the district to build a school-house, and levied his execution on the goods of a member of the district. *Held*, that he could not give evidence that D. had not performed his said contract, and therefore ought not to have recovered judgment against the district. SHAW, C. J., said: "Every member of a corporation is so far privy in interest in a suit against the corporation, that he is bound by a judgment against it." And, as was remarked by the same learned jurist in *Farnum* v. *Ballard, etc., Shop*, 12 Cush. 507, 509, as to a private corporation, the case is much stronger than as to such a public body as a school-district. Morawetz, in his recent work on Private Corporations, makes an admirable statement of the rule, and the reasons on which it is founded: "A judgment obtained against the corporation is certainly conclusive (until reversed for error or impeached for fraud) in a suit to charge the stockholders upon their unpaid subscriptions; and by analogy it should also be held conclusive in a suit to charge them upon their additional individual liability to creditors. It must be borne in mind that a corporation is composed of its stockholders, and that a judgment obtained against the corporation is in reality a judgment obtained against the stockholders in their corporate capacity. There is no reason why the members of a corporation should be allowed to contest a creditor's claim twice,—

once in the suit against the corporation through the corporate agents, and again in the suit brought to charge them individually. If the judgment against the corporation was obtained by fraud or through collusion with the company's agents, the stockholders may obtain relief through equitable proceedings." Morawetz, Priv. Corp. § 619.

The rule is the same in England. A statute of New South Wales provided that the chairman of a company could be sued on behalf of the company, and that execution on a judgment in such an action could be issued against the property of any member of the company, as if the judgment had been obtained against him personally. In an action upon such a judgment against a member beyond the territory of the colony, *held*, that the judgment might be impeached for want of jurisdiction or fraud in obtaining it, but that the defendant was precluded from disputing that the promises upon which the judgment was founded were never made, or from showing that they were obtained by fraud by the plaintiff. *Bank of Australasia* v. *Nias*, 4 Law & Eq. 252; S. C. 20 Law J. Rep. (N. S.) Q. B. 284. See, under a statute somewhat similar, *Hampton* v. *Weare*, 4 Iowa, 13; *Donworth* v. *Coolbaugh*, 5 Iowa, 300.

The judgment is *prima facie* evidence of the indebtedness, and can be questioned only for fraud or mistake. *Merchants' Bank* v. *Chandler*, 19 Wis. 435; *Grund* v. *Tucker*, 5 Kan. 70. See *Berger* v. *Williams*, 4 McLean, 577; Bigelow, Estop. (3d Ed.) 89. But in the Kansas case, while it was not necessary to decide that it was more than *prima facie* evidence, the reasoning of the court goes to the length that it is conclusive. Thompson, Stock Liab. § 329, note. And GRAY, Com., in *McMahon* v. *Macy*, 51 N. Y. 155, 165, while holding that the judgment was not even *prima facia* evidence, said that if it was given that force, "not having been made so by statute, I am unable to understand why it is not, like a judgment in any other case, conclusive."

In suits against officers of a corporation to charge them with debts on account of the neglect of some duty imposed upon them, the judgment recovered against the corporation is conclusive of the existence of the debt for which it was rendered. *Thayer* v. *N. Eng. Lith. Co.* 108 Mass. 523. *Contra, Miller* v. *White*, 50 N. Y. 137. See Thompson, Liab. Officers, etc., § 463; Thompson, Liab. Stockh. § 330.

Where stockholders are liable only on a particular class of debts or to a particular class of creditors, it is proper to go behind the judgment to prove that the debt recovered belonged to the class for which the stockholders are made liable. *Wilson* v. *Stockholders*, 43 Pa. St. 424; *Conant* v. *Van Schaick*, 24 Barb. 87; *Larrabee* v. *Baldwin*, 35 Cal. 135; Thompson, Liab. Stockh. § 334. And the judgment may not be conclusive as to the organization and existence of the corporation. *Hudson* v. *Carman*, 41 Me. 84.

3. NEW YORK CASES. The conclusiveness of the judgment has not been questioned except in New York, that I have been able to find, and the decisions in that state present a spectacle of great confusion. Chancellor KENT, in the case of *Slee* v. *Bloom*, held that a judgment against the corporation was not binding upon stockholders when sued individually, on the ground "that the acts of the trustees or agents of the company, while it subsisted as

a corporation, however binding and conclusive upon the company in its corporate capacity, and over the corporate property, are not binding and conclusive upon the individual stockholders of the company, when charged in their persons and property in their individual character; inasmuch as, in that character, they never were represented by such agents and trustees." On appeal to the court of errors this case was reversed, the court, in an opinion delivered by SPENCER, C. J., holding that the stockholders were concluded by the judgment against the corporation. 20 Johns. 669, (1822.) This last holding was referred to with approbation in *Moss* v. *Oakley*, 2 Hill, 265, 267, (1842.) In *Moss* v. *McCullough*, 5 Hill, 131, (1843,) a case arising upon stockholders' liability in the same corporation as in *Moss* v. *Oakley, supra*, the supreme court (COWEN, BRONSON, and NELSON, JJ.,) held that the judgment was not even *prima facie* evidence of the genuineness or validity of the debt. This case, after having gone through a remarkable history of judgments and reversals, came before the new supreme court, where it was held that the judgment was *prima facie* evidence, but subject to be impeached for collusion or mistake. *Moss* v. *McCullough*, 7 Barb. 279, (1849.) The question next came before the court of appeals. Three of the judges expressed the view that the judgment was *prima facie* evidence, while four refused to commit themselves to giving even that force to the judgment; and the case went off on other questions. *Belmont* v. *Coleman*, 21 N. Y. 96, (1860.) Below, the judgment had been held *prima facie* evidence. *Belmont* v. *Coleman*, 1 Bosw. 188. In 1861 the supreme court held that it was not even *prima facie* evidence. *Strong* v. *Wheaton*, 38 Barb. 616, 621. *Conklin* v. *Furman*, 8 Abb. Pr. (N. S.) 161, (1865,) follows the decision of the court of errors in *Slee* v. *Bloom, supra*. In *McMahon* v. *Macy*, 51 N. Y. 155, (1872,) before the commission of appeals, LOTT and GRAY, JJ., held the judgment not even *prima facie* evidence, while HUNT, J., held that it was. Contemporaneously with the case last cited, the question was before the court of appeals. *Miller* v. *White*, 50 N. Y. 137. That was an action to charge the trustees with a debt of the corporation, for failing to file and publish an annual report, and it was held that a judgment against the corporation for the debt was neither conclusive nor *prima facie* evidence of its validity. See, also, *Wheeler* v. *Miller*, 24 Hun, 541. The latest decision of the court of appeals upon the question (*Stephens* v. *Fox*, 83 N. Y. 313) seems to indicate a disposition to limit its previous rulings; in that case the court holding that in suits by creditors to subject unpaid subscriptions owing by a stockholder, a judgment against the corporation was the highest evidence of the indebtedness of the corporation to the creditor.

The answer to Chancellor KENT's reasoning would seem to be clear. The statutory liability to creditors is an obligation that persons must, in contemplation of law, be held to have had in view when they became stockholders. It is conceded that the officers and agents of a corporation, in the absence or fraud, can bind the stockholders by contracts made in behalf of the corporation. They have the power to execute bonds and other negotiable instruments, which not only have a *prima facie* validity, but may fasten an indisputable liability upon the corporation. These acts of the officers are given their ordinary legal effect, not only against the corporation, but also against the stockholders in all proceedings to make them individually liable. It is

admitted further that the officers not only have the power, but it is their duty, to represent the corporation in litigation against it. Why, then, should not the result of such litigation, as much as the acts of the officers and agents of the corporation in reference to contracts, be given its ordinary legal effect?

*Cincinnati, March* 1, 1883. J. C. HARPER.